1          UNITED STATES DISTRICT COURT
           EASTERN DISTRICT OF NEW YORK
2
   - - - - - - - - - - - - - X
3
   UNITED STATES OF AMERICA,    :    15-CR-252(RJD)
4                               :
                                :    U.S. Courthouse
5                               :    Brooklyn, New York
        -against-              :
6                               :    TRANSCRIPT OF
                                :    STATUS CONFERENCE
7                               :
                                :
8   JUAN ANGEL NAPOUT,          :    March 29, 2016
                                :    11:00 a.m.
9           Defendant.          :
                                :
10  - - - - - - - - - - - - - X

11  BEFORE:
                 HONORABLE RAYMOND J. DEARIE, U.S.D.J.
12
    APPEARANCES:
13
    For the Government:       ROBERT L. CAPERS, ESQ.
14                            United States Attorney
                              271 Cadman Plaza East
15                            Brooklyn, New York 11201
                              BY:  EVAN M. NORRIS, ESQ.
16                                 KRISTIN MACE, ESQ.
                                   PAUL A. TUCHMANN, ESQ.
17                                 Assistant U.S. Attorneys

18
    For the Defendant:        GREENBERG TRAURIG, LLP
19                            One International Place
                              Boston, MA  02110
20                            BY:  A. JOHN PAPPALARDO, ESQ.
                                   SILVIA PINERA-VAZQUEZ, ESQ.
21                                 JACQUELINE BECERRA, ESQ.

22
    Court Reporter:     Holly Driscoll, CSR
23                      Official Court Reporter
                        225 Cadman Plaza East
24                      Brooklyn, New York 11201
                        (718) 613-2274
25  Proceedings recorded by mechanical stenography, transcript
    produced by Computer-Assisted Transcript.

1          THE COURT:  Good morning.

2          THE CLERK:  We are on this morning for a status

3   conference, this is USA versus Juan Napout, docket number

4   15-CR-252, we're on superseder 1 and Mr. Napout is defendant

5   number 22.

6          Can I ask the attorneys please to note their

7   appearances for the record beginning with counsel for

8   government.

9          MR. NORRIS:  Your Honor, Evan Norris, Kristin Mace

10  and Paul Tuchmann for the United States.  Good morning, Your

11  Honor.

12         THE COURT:  Good morning.

13         MS. MACE:  Good morning.

14         THE CLERK:  I'm going to ask the attorneys please to

15  use the microphone, speak into the microphone.

16         MR. PAPPALARDO:  Good morning, Your Honor, I am

17  John Pappalardo from the law firm of Greenberg Traurig; on the

18  phone with the client, Mr. Napout, in Miami is Jacqueline

19  Becerra from Greenberg Traurig, and with me is Silvia Pinera-

20  Vazquez, co-counsel.

21         MS. PINERA-VAZQUEZ:  Good morning, Judge Dearie.

22         THE COURT:  Good morning.

23         You folks hear me on the telephone?

24         MS. BECERRA:  Yes, we do, Your Honor.

25         THE COURT:  Mr. Napout is with you?

1          MS. BECERRA:  Yes, he is, Your Honor, he is with me.

2          THE COURT:  Well, I have the correspondence, in a

3    way it's sort of anticipatory; as I've said in the past,

4    although I don't think Mr. Pappalardo -- I guess this is the

5    first time you're joining this crew, it is my intention, as

6    I've announced in the past, at the next scheduled conference

7    to schedule the entire pretrial phase and the trial.  I'm

8    reluctant to do that today because I only have one defendant

9    and counsel with me and, in fact, I'm going to put a notice

10   out to everybody to remind them that this subject is on the

11   table and then I encourage them to confer with one another and

12   with the government about a realistic trial date.

13          I fully appreciate the fact that the full roster of

14   defendants is not before me and the roster may change from

15   time to time, of course, but I think, as I said the very first

16   time we met, there comes a point in time when we have to move

17   forward and prepare for trial and we now have a sizeable core

18   of defendants and their counsel before me, many of whom have

19   had ample time, it seems to me, to familiarize themselves with

20   the discovery and the complexities of the case, many if not

21   necessarily all, but it behooves us to schedule motions and

22   come up with a trial date and I need input for that, I'm not

23   going to just arbitrarily pick a date out of the air, all the

24   obvious information that one would want, including the

25   impossible question which would be if we proceed to trial with

1    something like the core that we have now, how long a trial are

2    we talking about, for example, I'll repose this question in

3    April and make reference to it, of course, in my notice to

4    counsel, but I'm curious?

5            MR. NORRIS:  Well over one month, Your Honor.

6            THE COURT:  Well over one month, that could be

7    two months, six months, a year and a half, but well over one

8    month.

9            MR. NORRIS:  Yes.

10           THE COURT:  Okay.

11           MR. NORRIS:  And that's something that we can

12   certainly elaborate further on on the April 13th status

13   conference.

14           THE COURT:  Well, as far as legally, Mr. Pappalardo,

15   I don't know that you've got much of a position here but I am

16   all with you, in terms of the need to proceed as efficiently

17   and as quickly as is reasonably possible with trial, I am with

18   you, and I intend to schedule that trial with the collective

19   input of all of you the next time we get together which I

20   believe is April 13th and in anticipation of that I'm going to

21   alert, just remind people that that is my stated intention to

22   schedule motions and a trial date and we'll see where that

23   takes us, and get input from you all.

24           Right now we have about ten or so before the Court.

25           MR. NORRIS:  That's right and at this point with one

1  defendant, Rafael Callejas, having pled guilty yesterday, we

2  anticipate that there will be nine that will appear before the

3  Court.

4  THE COURT:  Nine, although that number could go up

5  theoretically.

6  MR. NORRIS:  It could go up --

7  THE COURT:  It could go down.

8  MR.  NORRIS:  -- it could go down, it could do

9  either.

10  THE COURT:  Let's hope it goes down only for the

11  logistics involved, although it wouldn't be the largest

12  criminal case I've ever tried, ten defendants, not by far.

13  Is there anything you want to put on the record,

14  Mr. Pappalardo?

15  MR. PAPPALARDO:  Well, Your Honor, I'm happy to

16  reserve these arguments for April 13th; I filed this motion on

17  behalf of Mr. Napout for a reason and in my review of the

18  request by the government to exclude the time a couple of

19  things struck me; number one, I understand the Speedy Trial

20  Act, Your Honor, I understand this circuit and I understand

21  that the government is asserting that Mr. Napout, who

22  currently is a defendant joined for trial, must file a motion

23  to sever for it to be considered proper argument on

24  reasonableness.

25  Having said that, Your Honor, if you look at the

1  cases that the government cited, they concede in their letter

2  to the Court on March 28th that there are, and I quote, "a

3  handful of defendants believed to be in countries that do not

4  extradite their nationals" and in part that's what they're

5  relying on when they present to the Court that this is a

6  complex case.  Let me suggest to the Court that under these

7  circumstances --

8         THE COURT:  There are, however, some still not

9  before the Court who are involved in extradition proceedings,

10  are there not?

11         MR. NORRIS:  That's right, there are several, Your

12  Honor, and as the table we included in our letter made clear,

13  three have already come from various jurisdictions earlier

14  this month.

15         THE COURT:  I interrupted you.  Go ahead, sir.

16         MR. PAPPALARDO:  Oh, no, that is perfectly fine,

17  Your Honor.  I only raise this issue for the Court because I

18  think it will be germane in connection with the Court's

19  consideration of whether or not, number one, the case remains

20  complex, but certainly with respect to setting a trial date

21  for the entire case which is what we're asking for by this

22  motion, not just for Mr. Napout.  If in the future we move to

23  sever, then we will be back before the Court.

24         What I would point out, Your Honor, is that the

25  concession by the government, in my view, is enough for the

1  Court to consider reasonableness.  The exclusion is

2  necessarily based in part on some unknown number of defendants

3  who concededly will never appear.  None of the cases cited by

4  the government in their response are ones where an (h)(6)

5  exclusion is based in part on indicted co-defendants who will

6  never be before the Court and I would also say, Your Honor,

7  not being unfamiliar with extraditions, not being unfamiliar

8  with this side of the law, I would submit to the Court that

9  this is far more complicated in terms of getting people back

10  here than whether or not a country chooses not to extradite a

11  national.  There are some significant legal issues that are

12  present in this case including, but not limited to, the fact

13  that what is asserted by the government here is not a crime in

14  the various countries where these people find themselves and

15  are currently under arrest and waiting extradition; they don't

16  meet the duality requirement, Your Honor, which is a strict

17  requirement for extradition in those countries.

18           Putting it simply, the conduct complained of here in

19  some of those countries is not a crime.  You know, the

20  government would like to assert that soccer officials are

21  government officials but they're simply not and they haven't

22  been viewed so in many of the countries which means that we're

23  dealing here with the concept of commercial bribery.

24  Commercial bribery is not a crime in some countries.  So, that

25  is the basis for the money laundering and that triggers the

RICO and I would submit to the Court that that makes it much
more difficult in addition to the idea or the concept that a
country may or may not wish to extradite a foreign national
and I would submit to the Court that that would enhance the
likelihood that some of these people will never see the United
States and never be before the jurisdiction of this Court
which bears upon the issues of (h)(6).

        THE COURT:  In part, sure.

        MR. PAPPALARDO:  And another point, Your Honor, I
wish to flag just in advance --

        THE COURT:  I'm not waiting for them, whether it
does or doesn't.

        MR. PAPPALARDO:  That's exactly right and we're
asking you not to wait for them.

        THE COURT:  We're going forward.

        MR. PAPPALARDO:  Excellent.

        THE COURT:  I said that the first day I met a group
of defendants in this case.  I don't call it complex just to
put a label on it, I call it complex because it was explained
to me by both sides of the aisle that the undertaking here in
terms of preparation is significant and the complexity in that
context has to do with basics fairness, I think we're past the
point, and I only designated it as complex for purposes of
discovery, the discovery phase.

        MR. PAPPALARDO:  Understood.

1    THE COURT:  Shortly the clock starts to tick.

2    MR. PAPPALARDO:  Your Honor, there's one other quick

3  point that I wish to make that perhaps could be cured prior to

4  April 13th which is the (h)(7) designation of evidence in a

5  foreign country, I'm not aware of any finding by the Court

6  that there's a preponderance of the evidence that that is the

7  case but that's not -- I just point that out.

8    THE COURT:  I haven't made such a finding.  The

9  government has made the representation, it's certainly

10  consistent with what little I do know about the case but I

11  haven't explicitly made that finding.

12    MR. PAPPALARDO:  Right.  Well, I think, Your Honor,

13  all of these issues are more properly brought up in a larger

14  setting with multiple defendants.

15    THE COURT:  Well, I'm not sure they're worth the

16  time, frankly.  You ask alternatively for a trial date.

17    MR. PAPPALARDO:  I do, Your Honor.

18    THE COURT:  You're going to get one.  You're going

19  to get one.

20    MR. PAPPALARDO:  Again, under the present state of

21  affairs, we have not filed a motion to sever so we're asking

22  for a trial date for the entire group.  That may change very

23  shortly and if it does, we certainly will be back before the

24  Court.

25    THE COURT:  That may change, what does that mean?

1    MR. PAPPALARDO:  In other words, we may file a

2  motion to sever, Your Honor.

3    THE COURT:  Oh, fine.

4    MR. PAPPALARDO:  Which then triggers the

5  reasonableness argument generally.

6    THE COURT:  I understand.  Well, depending on the

7  Court's approach to severance.

8    MR. PAPPALARDO:  Exactly.

9    THE COURT:  Which raises one of the points I'll

10  include in my notice, are there readily available common sense

11  bases to create groups of trial defendants; that may not

12  please you or Mr. Napout if you're in group two and three, but

13  do those exist?  It's one of the questions I put to all

14  counsel and will include in my notice.  I don't know that it

15  would be necessary to develop such constructs but it's

16  something we need to know and explore because the chances are,

17  as we approach trial, we're going to be adding, maybe we'll

18  add a defendant or two, you know, I'm not going to put

19  everything on halt because we've added a new defendant and

20  that defendant's counsel is stepping in from scratch.  This is

21  a pretrial phase and we're going to move in that direction.

22  So, obviously the notion of possible severance, not

23  necessarily for the classic reasons, I may not agree with you

24  on that, who knows, but just as matters of priority, of trial

25  efficiency and administration, it is something I have to

1  consider and I need input on that as well.

2        MR. NORRIS:  We'll certainly be prepared to provide

3  that, Your Honor, and we will also confer, as Your Honor will

4  direct, with the other counsel for the other defendants in

5  advance of April 13th.

6        THE COURT:  We can accomplish something, I expect to

7  set the date, you know me, I don't set unrealistic trial

8  dates, to set the date on or immediately after our April 13th

9  gathering.

10        MR. NORRIS:  Just as a process matter, I know

11  Mr. Pappalardo has suggested he may or may not seek a

12  severance, our understanding is that in order for there to be

13  a group of defendants, whether it is the ones here already or

14  some other group set down for trial, there will need to be a

15  formal severance that the defendants in the United States are

16  severed from the ones who are pending extradition and the

17  government isn't necessarily opposed to that, we can certainly

18  see the practical reasons.

19        THE COURT:  We'll cross that bridge when we have to.

20  Right now we don't have to.  We'll perhaps at some point in

21  the near to midterm future have to sever those defendants who

22  are here.  Okay.

23        MR. NORRIS:  The only reason I raise it, Your Honor,

24  is just that since Mr. Pappalardo had said in his letter from

25  the other day that he intended to file a motion for severance,

1  we had been anticipating that the Court would set a briefing

2  schedule so that defendants could file that motion or other

3  motions.

4          THE COURT:  I'm setting a briefing schedule on

5  April 13th.

6          MR. NORRIS:  Okay.

7          THE COURT:  Okay.  I'll set the briefing schedule,

8  I'm going to set the trial date.

9          Yes, ma'am.

10          MS. PINERA-VAZQUEZ:  Thank you, Judge.  If I could

11  just flag another issue which I believe the Court mentioned

12  early on?

13          THE COURT:  Excuse me just a second, I'm doing that

14  in response to the needs of all counsel who have expressed to

15  me they need this time, the only difference is because of my

16  own schedule we went from the March date to an April 13th

17  date.  I want to hear from counsel before I do anything.  I'm

18  going to set the motion schedule on the 13th as well as the

19  trial date either on or immediately thereafter.

20          MS. PINERA-VAZQUEZ:  Thank you, Judge.  I believe

21  the Court flagged out that one of the reasons for the complex

22  was for time to look at discovery, I believe that's what Your

23  Honor just said a moment ago, and this is really an issue

24  that's been a problem with us because we have not gotten any

25  discovery but for four disks that had nothing to do with

1  Mr. Napout and yesterday on the eve of this hearing we get

2  notification that there apparently are 100 CDs of audio

3  recordings and 300 CDs of papers.  So, they basically dumped

4  this on us today, the day before this hearing.  Had we not

5  filed for this -- objected to this extension of time, who

6  knows if we ever would have gotten those hundred CDs or

7  notification that they even existed.

8          So, our concern is two-fold; first of all, we've

9  been asking for discovery since the arraignment which we

10  should have gotten this information certainly not three months

11  after arraignment and, more importantly, they're saying

12  there's 100 audio CDs and we'd request some sort of direction

13  from the Court that they instruct us to where our client is

14  because we don't believe our client is in any of those CDs

15  and, more importantly, Your Honor, the CDs are in Spanish, the

16  only CD that we received from the government that was given to

17  us a month ago wasn't even transcribed.  So, Mr. Pappalardo

18  that does not speak Spanish along with many people of our team

19  have not been able to understand it because the government has

20  not provided transcripts.  So, there are significant discovery

21  issues in this case and to say the least being dumped with 100

22  allegedly audio CDs the day before this hearing is very

23  disconcerting because in the end had we not filed this motion,

24  we would have not gotten this discovery.

25          THE COURT:  Well, I hope that's not the case but why

1  did you get it so late; why did they get it so late?

2       MR. NORRIS:  Your Honor, it has nothing to do with

3  the status, we have engaged in providing ongoing discovery,

4  we've provided 30,000 pages of discovery to all defendants

5  including Mr. Napout.  Counsel is incorrect that it doesn't

6  relate to Mr. Napout.  They asked early on for any recordings

7  that had his voice.  We provided the one recording that had

8  his voice.

9       Counsel is correct that yesterday we notified

10  defense counsel who are asking for discovery to provide us

11  with a hard drive so we could make a quite large production of

12  the records that exist and bank records, Swiss MLAT bank

13  records, which is a partial production, and other records to

14  counsel.  We'll provide all of these records, bank and

15  recordings, with a very specific index precisely so that

16  counsel can identify who is intercepted, what dates and so on,

17  and that's to ensure that counsel is able to review them and

18  understand what they want to prioritize but the broader point

19  is we've been engaging in discovery, provided substantial

20  discovery, we're still engaged in that process and we're doing

21  everything we can to both get it to counsel and to get it to

22  them with the types of indices and other information they need

23  to be able to address it clearly.

24       THE COURT:  Translations?

25       MR. NORRIS:  Translations, we'll start providing

1  them as we have them clean enough, they've all signed draft

2  transcript stipulations, we'll certainly provide that as well.

3  We're trying to move the process along.  There is a lot of

4  discovery in the case, no question, and some of it continues

5  to come in, for instance, from foreign countries.

6          THE COURT:  When you say you provided it, have you

7  provided it to these folks?

8          MS. PINERA-VAZQUEZ:  No, Your Honor.

9          MR. NORRIS:  Yes, Your Honor.

10         THE COURT:  We have very simple rules here, when I

11  ask him a question, I expect an answer from him.  I'm not

12  going to cut you short, don't interrupt, all right.

13         MR. NORRIS:  Yes, Your Honor, we provided

14  substantial discovery to the defendant Napout to date.  In

15  addition, yesterday we provided a letter to this defendant,

16  as well as others, asking them to give us a hard drive so

17  we could provide yet further discovery, that is what counsel

18  is referring to at the moment but, yes, I'm not referring to

19  general discovery, I'm referring to what has been provided

20  to Napout.

21         THE COURT:  Yes, ma'am.

22         MS. PINERA-VAZQUEZ:  Yes, Your Honor, the hard drive

23  that Mr. Norris is referring to, we offered to provide a hard

24  drive, on January 14th I sent an e-mail to Ms. Mace offering

25  to provide a hard drive because I'm familiar with the Eastern

1 District discovery policies. At that time no response was

2 received. To say that it's been rolling discovery is really

3 not accurate, Your Honor. The government has had a

4 significant amount of time to investigate the case before

5 they indicted our client, I would venture to say two to three

6 years from the public information that we've gathered, to all

7 of a sudden the day before this hearing say that they have 100

8 CDs and bank records of which our client will not have any

9 because there were no bank transfers, as the indictment points

10 out regarding our client, provided to us at this juncture is,

11 like I said before, it concerns us because they should have

12 provided this two months ago. And as far as the transcripts,

13 the one call, we've had that call for two months, that call

14 does not implicate our client, our client simply says hello

15 but because I speak Spanish I understood that, Mr. Pappalardo

16 has not been able to, and a transcript has yet to be provided

17 and we just flag these issues for the Court because it hampers

18 our ability to represent our client adequately.

19           MR. PAPPALARDO: Your Honor, if I may please, what

20 we've received from the government so far after a request on

21 the initial appearance for any statements by the defendant,

22 the only statement by the defendant is contained in one five

23 hour tape and he says hello in front of an elevator in a

24 crowded setting in a hotel, that's it. There are no documents

25 with the exception of his name appearing misspelled in one

1  ledger which is I would argue, quite frankly, exculpatory as

2  opposed to damning.  There are no other documents we've

3  received.  I understand this is a conspiracy, I understand

4  we're going to get all of the other materials, what I am

5  asking for, Your Honor, and we will review those other

6  materials, I'd like to know where Mr. Napout either speaks or

7  is referenced by somebody speaking in 100 or so tapes because,

8  quite frankly, Your Honor, I don't think that there is much

9  evidence in this case which is one of the reasons why we are

10  insisting on going to trial in the case.  And, again, I

11  understand the conspiratorial aspects of things; by the same

12  token, at some point in time, and we will of course need to

13  review the evidence and we will file appropriate motions once

14  that evidence is reviewed, but we would like a speedy trial,

15  Your Honor, in this case with respect to Mr. Napout which we

16  will address after the 13th of April and the status

17  conference.

18            THE COURT:  I'm hearing two different things here, I

19  don't understand.  To be candid, I have so little tolerance of

20  these kinds of disputes.  I'm not finding fault, you have

21  problems, you bring them to my attention but here in the

22  district generally lawyers informally get together and work

23  out these discovery issues.  We don't get into a lot of

24  formality and we shouldn't be getting into a lot of yapping

25  with one another, but I'm getting two different pictures here

1   about the discovery.  Have you responded to this question, do

2   you have him on tape?

3           MR. NORRIS:  We have, Your Honor, and we've

4   responded and nothing we said is different from that and to

5   the extent counsel is asking for an index with the additional

6   recordings we provide which provide evidence of the

7   racketeering conspiracy at large, we'll provide that index, it

8   won't be different from what we've described for

9   Mr. Pappalardo before which is the tape with his client's

10  voice on it that we've already provided.

11          THE COURT:  One tape?

12          MR. NORRIS:  One tape, but the point and I think the

13  disconnect here is there is voluminous discovery in this case

14  because it is a 24-year racketeering enterprise involving 27

15  defendants, three dozen co-conspirators, 15 schemes and it is

16  complex and we are obliged to provide all of it to all parties

17  and are endeavoring to do that for Mr. Napout and others.

18          THE COURT:  They have been in the case now for a

19  couple of months --

20          MR. NORRIS:  Yes.

21          THE COURT:  -- and are complaining that they don't

22  have discovery, that's why I'm going in two different

23  directions here.

24          MR. NORRIS:  No question, Your Honor.  The only

25  point is we provided 30,000 records to date.

1      THE COURT:  To them?

2      MR. NORRIS:  Yes.  We're providing more right now

3 and we're trying to get it all out the door as quickly as we

4 can but there's a lot, we're engaged in an ongoing process.

5 What I can assure the Court and will say to Mr. Pappalardo and

6 co-counsel here, we can certainly engage in the kind of

7 informal exchange so that when we provide additional

8 discovery, if the index, for instance, isn't clear to them as

9 to whether it implicates specifically their client or not,

10 we'll highlight for them the portions they may want to see.

11      THE COURT:  Have you met informally, this group?

12      MR. PAPPALARDO:  We have, Your Honor, when I

13 understood that there were arrests in Switzerland in May, I

14 called Mr. Norris a couple of days later, I told him who I

15 represented and, you know, wanted to engage in a discussion.

16 I made that fairly plain throughout the summer months.  In

17 fact, three days --

18      THE COURT:  No, I understand that, but since

19 Mr. Napout has been here have you met to work out these

20 discovery issues, schedules and so forth?

21      MR. PAPPALARDO:  We haven't, Your Honor, and we've

22 only made requests that, quite frankly, have not been

23 answered.  I would suggest, Your Honor, we can take this out

24 of the presence of the Court, we can have this discussion and

25 we'll certainly do so right now.  The Court needn't waste its

1  time with this.

2    THE COURT:  It is not a waste of time but I want you

3  to meet as professionals --

4    MR. PAPPALARDO:  Absolutely.

5    THE COURT:  -- and attempt to work this out and then

6  if you're at loggerheads and you are not getting either on a

7  timely basis or you're not getting at all something you think

8  you're entitled to, then you bring it to my attention and we

9  will indeed have it out; fair enough?

10    MR. PAPPALARDO:  That is fine, Your Honor.

11    MR. NORRIS:  Fair enough.

12    THE COURT:  We have a little push me pull you here

13  generally because we're trying to get the case on a trial

14  track and we have to make sure that the people who have to

15  defend people have the wherewithal and the information and the

16  discovery to do that.  That requires you and your team who are

17  no doubt going to be looking for a trial to get that taken

18  care of.  If the problem persists, you'll meet, bring it to my

19  attention, I'll have you back in a moment's notice, even from

20  Florida.

21    MR. NORRIS:  Thank you, Your Honor.

22    MS. PINERA-VAZQUEZ:  Thank you, Judge.

23    MR. PAPPALARDO:  Thank you, Your Honor.

24    THE COURT:  Anything else?

25    MR. NORRIS:  Can I just have one moment, Your Honor,

1    just to confer?

2              (Pause while government counsel confer.)

3              THE COURT:  I can't bear these -- we've got a case

4    to try here.  My philosophy is kill them with kindness, you

5    know, get it out there.

6              MR. NORRIS:  Your Honor, just if we could end just

7    on the exclusion of time point, we weren't certain where we

8    ended up here; again, our understanding, we think, frankly,

9    the parties share it and the Court shares it, is that the

10   speedy trial clock hasn't begun at this point.

11             THE COURT:  As of this point it has not.

12             MR. NORRIS:  Nonetheless, in an abundance of

13   caution, as we in the past have made applications to exclude

14   time based on complexity and based on the existence of MLATs

15   overseas, we would just ask that time, in an abundance of

16   caution, be excluded.

17             THE COURT:  I have no reservation or hesitation to

18   continue the exclusion in the interests of justice, the

19   complexity, look what we're talking about here, they're

20   complaining and I take their representations at face value

21   that they haven't gotten what they need and it is voluminous,

22   I'm hearing numbers like 30,000 that's got to be taken care

23   of, but I'm not going to stop the clock forever, I'm not going

24   to put you in control of the clock if you don't meet your

25   discovery obligations, that's my point, but based on what I

1  have seen and heard so far and at least up until the next

2  status conference I have no concerns or reservations that the

3  exclusion on the basis of complexity and attendant issues of

4  fairness that surround it is proper and I continue it.

5             MR. PAPPALARDO:  Thank you, Your Honor.

6             MR. NORRIS:  Thank you, Your Honor.

7             THE COURT:  Have a lovely day.

8             MS. PINERA-VAZQUEZ:  Thank you, Your Honor.

9             (Time noted:  11:30 a.m.)

10            (End of proceedings.)

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25