UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------X

UNITED STATES OF AMERICA,

               - against -

ALFREDO HAWIT,
ARIEL ALVARADO,                                       **MEMORANDUM & ORDER**
RAFAEL CALLEJAS,                                         15-cr-252 (PKC)
BRAYAN JIMENEZ,
EDUARDO LI,
JULIO ROCHA,
RAFAEL SALGUERO,
COSTAS TAKKAS,
HECTOR TRUJILLO,
REYNALDO VASQUEZ,
JACK WARNER,
JUAN ANGEL NAPOUT,
MANUEL BURGA,
CARLOS CHAVEZ,
LUIS CHIRIBOGA,
MARCO POLO DEL NERO,
EDUARDO DELUCA,
RAFAEL ESQUIVEL,
EUGENIO FIGUEREDO,
NICOLAS LEOZ,
JOSE MARIA MARIN,
JOSE LUIS MEISZNER,
ROMER OSUNA,
RICARDO TEIXEIRA,
AARON DAVIDSON,
HUGO JINKIS, and
MARIANO JINKIS,

               Defendants.
-------------------------------------------------------X

PAMELA K. CHEN, United States District Judge:

       The Superseding Indictment (Dkt. 102) alleges ninety-two criminal counts against

twenty-seven individuals based on their alleged involvement in conspiratorial racketeering, wire

fraud, money laundering and other offenses allegedly undertaken to enrich themselves by virtue

of their various positions in the Federation Internationale de Football Association ("FIFA"), its

continental, regional, and national affiliates, and certain sports marketing companies.[1]  Discovery is underway and trial is scheduled to begin on November 6, 2017.

The following pre-trial motions are before the Court:  (1) Defendant José Maria Marin's motion to dismiss Count One of the Superseding Indictment (Dkt. 487), (2) Defendant Juan Angel Napout's motion to dismiss all charges against him for lack of extraterritorial jurisdiction (Dkt. 491), and (3) Defendant Napout's motion for a bill of particulars (Dkt. 490).  The Court heard oral argument on Defendants' motions on February 14, 2017.

For the reasons stated below, the Court denies Marin's motion to dismiss Count One, denies Napout's motion to dismiss the counts against him, and denies in part and grants in part Napout's motion for a bill of particulars.  The Government shall file the bill of particulars required by this Order no later than March 10, 2017.

## I.  Marin's Motion to Dismiss Count One

Defendant Marin moves to dismiss Count One of the Superseding Indictment on the grounds that (1) the indictment does not adequately plead an "enterprise," an essential element of a charge under the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1962(d), (2) even assuming the indictment adequately alleges an enterprise, the indictment does not adequately allege that Marin knowingly participated in that enterprise, and (3) Count One is duplicitous of the other counts against Marin.  (Dkts. 487-1, 519.)  For the reasons stated below, the Court disagrees with Marin on each of these grounds.

First, the Superseding Indictment adequately alleges an association-in-fact enterprise with respect to Count One.  The Supreme Court has explained that "an association-in-fact enterprise is

---

[1] The Court presumes the parties' familiarity with the underlying facts of this action, which are set forth in extensive detail in the Superseding Indictment.  (Dkt. 102.)

simply a continuing unit that functions with a common purpose," and "need not have a hierarchical structure or a 'chain of command.'" *Boyle v. United States*, 556 U.S. 938, 948 (2009); *accord United States v. Pierce*, 785 F.3d 832, 838 (2d Cir. 2015). With respect to Count One, the very first paragraph of the Superseding Indictment expressly alleges an enterprise consisting of FIFA, specified continental confederations, specified regional federations, specified national associations, specified sports marketing companies, and certain related persons and entities. (SI ¶ 1.) Subsequent paragraphs in the Superseding Indictment provide additional detail on the constituents of this enterprise (SI ¶¶ 4-93), and various other paragraphs specifically allege collaboration among the constituents in the enterprise (*e.g.*, SI ¶¶ 15 (alleging that the continental confederations work closely with "one another" to organize international soccer competitions), 22 (similar), 98 (alleging that the constituents of the enterprise "became increasingly intertwined with one another" over time)).

Marin's argument that these allegations are insufficient because they "do[] not fit" the other factual allegations set forth in the indictment (Dkt. 487-1 at 8), which is the thrust of his challenge to the "enterprise" element of Count One (*see* Dkt. 487-1 at 8-10, Dkt. 519 at 1-4)[2], appears to invite the Court to disregard the Government's express allegations of a global, association-in-fact enterprise (*see* SI ¶¶ 1-93), merely because the Superseding Indictment contains comparatively more detailed allegations concerning the interaction among constituents of the smaller, continental enterprises that relate to other counts in the indictment (SI ¶¶ 142-361). This kind of parsing is not consistent with the standards that govern the sufficiency of a criminal indictment, which

---

[2] At oral argument, Marin's counsel reiterated its characterization of the RICO enterprise alleged in Count One of the Superseding Indictment as a rimless "wheel" (Dkt. 519 at 3), based on the Government having failed to allege any connections between the "spokes" of the wheel (*i.e.*, the continental confederations).

require only that the indictment contain a "plain, concise and definite written statement of the essential facts constituting the offense charged." Fed. R. Crim. P. 7(c)(1); *see United States v. Flaharty*, 295 F.3d 182, 198 (2d Cir. 2002) ("In order to state an offense, an indictment need only track the language of the statute and, if necessary to apprise the defendant of the nature of the accusation against him, state time and place in approximate terms." (internal quotations and alterations omitted)); *see also United States v. Yannotti*, 541 F.3d 112, 127 (2d Cir. 2008) (reciting the lenient pleading standards that apply to criminal indictments). Under these governing standards, the Superseding Indictment clearly alleges an association-in-fact enterprise with respect to Count One.[3]

Second, the Superseding Indictment adequately alleges Marin's involvement in the enterprise alleged with respect to Count One. As the parties agree (Dkt. 487-1 at 11; Dkt. 516 at 20), to allege a defendant's involvement in a RICO conspiracy, an indictment need allege only that a defendant agreed to further "the general criminal objective of a jointly undertaken scheme." *Yannotti*, 541 F.3d at 122; *see also United States v. Ciccone*, 312 F.3d 535, 542 (2d Cir. 2002) ("[I]t suffices that [the defendant] adopted the goal of furthering or facilitating the criminal endeavor" (quoting *Salinas v. United States*, 522 U.S. 52, 65 (1997) (brackets omitted)). The Superseding Indictment satisfies this requirement by alleging, *inter alia*, that Marin and others "conspired with one another to use their positions within the enterprise to engage in schemes involving the solicitation, offer, acceptance, payment, and receipt of undisclosed and illegal payments, bribes, and kickbacks." (SI ¶ 95; *see also* SI ¶¶ 50, 364.) Marin's claim that these

---

[3] The civil cases on which Marin relies (Dkt. 519 at 3) are neither binding nor persuasive in this context because they involved the application of entirely different legal standards. *See*, *e.g.*, *Rao v. BP Prods. N. Am., Inc.*, 589 F.3d 389, 400 (7th Cir. 2009) (applying "plausibility" standard under *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 545 (2007)).

allegations are insufficient because they "fall far short of *establishing* that Marin could have joined the conspiracy" (Dkt. 487-1 at 11 (emphasis added)) is premised on the incorrect notion that the indictment's allegation of Marin's involvement in the conspiracy must be demonstrated through specific factual allegations. The law simply does not require that kind of factual substantiation in an indictment. *See Flaharty*, 295 F.3d at 198; *see also, e.g.*, *United States v. Frias*, 521 F.3d 229, 235-36 (2d Cir. 2008).

Third, Count One is not duplicitous of other counts against Marin.[4] An indictment is duplicitous "when a single offense is alleged in more than one count"—*i.e.*, where two charges in an indictment "are the same in fact and in law." *United States v. Jones*, 482 F.3d 60, 71-72 (2d Cir. 2006) (quotations omitted). Marin contends that Count One is duplicitous because the indictment, by failing to plead an "enterprise" with respect to Count One, "fail[s] to tie . . . together" the six predicate conspiracies alleged against Marin in other counts. (Dkt. 487-1 at 12-13; Dkt. 519 at 6-7.) But, contrary to Marin's position, the Superseding Indictment does adequately allege an enterprise, *supra,* so even assuming that Marin's articulation of the duplicity doctrine is correct, Count One is not duplicitous. Moreover, Count One is not duplicitous because the global RICO conspiracy alleged in Count One of the Superseding Indictment has a different scope and different objectives than the smaller conspiracies alleged in other counts of the Superseding Indictment. *See Jones*, 482 F.3d at 72 (rejecting defendant's claim of duplicity where the indictment alleged separate conspiracies in separate counts—even though some factual "overlap[]" existed between the alleged conspiracies—because "multiple agreements to commit separate crimes constitute multiple conspiracies").

---

[4] Though Marin's counsel appeared to back away from this ground at oral argument, the Court nonetheless addresses it.

For the foregoing reasons, the Court denies Marin's motion to dismiss Count One of the Superseding Indictment.

## II.    Napout's Motion to Dismiss Based on Extraterritoriality

Napout moves to dismiss all charges against him as impermissible extraterritorial applications of the federal wire fraud statute (Counts 9 and 83), the federal money laundering statute (Counts 10 and 84), and the federal RICO statute (Count 1).

### A.  Supreme Court's Decision in *RJR Nabisco*

Just last year, in *RJR Nabisco, Inc. v. European Community*, 136 S. Ct. 2090 (2016), the Supreme Court clarified the "two-step framework for analyzing extraterritoriality issues":

> At the first step, we ask whether the presumption against extraterritoriality has been rebutted—that is, whether the statute gives a clear, affirmative indication that it applies extraterritorially.  We must ask this question regardless of whether the statute in question regulates conduct, affords relief, or merely confers jurisdiction.  If the statute is not extraterritorial, then at the second step we determine whether the case involves a domestic application of the statute, and we do this by looking to the statute's "focus."  If the conduct relevant to the statute's focus occurred in the United States, then the case involves a permissible domestic application even if other conduct occurred abroad; but if the conduct relevant to the focus occurred in a foreign country, then the case involves an impermissible extraterritorial application regardless of any other conduct that occurred in U.S. territory.

136 S. Ct. at 2101 (two-step framework as reflected in *Morrison v. Nat'l Aus. Bank Ltd.*, 561 U.S. 247 (2010) and *Kioebel v. Royal Dutch Petroleum Co.*, 133 S. Ct. 1659 (2013)).  Where there is a clear indication at step one that the statute applies extraterritorially, the court should not proceed to step two or consider the statute's focus.  *Id*. at 2103.

Reviewing the Second Circuit's decision in a civil RICO action,[5] the Supreme Court affirmed the Circuit's holding that RICO's criminal provisions, including its conspiracy provision,

---

[5] *Eur. Cmty v. RJR Nabisco, Inc.*, 764 F.3d 129 (2d Cir. 2014), *aff'd in part, rev'd in part*, 136 S.Ct. 2090 (2016).

18 U.S.C. § 1962(d), may be applied extraterritorially "to the extent that the predicates alleged in [the] case themselves apply extraterritorially."  136 S. Ct. at 2102 (as to §§ 1962(b) and (c)); *id*. at 2103 (assuming without deciding that "§ 1962(d)'s extraterritoriality tracks that of the provision underlying the alleged conspiracy").  The Court emphasized that the predicate statute must "manifest[] an unmistakable congressional intent to apply extraterritorially," that not all RICO predicates have extraterritorial effect, and that "[t]he inclusion of *some* extraterritorial predicates does not mean that *all* RICO predicates extend to foreign conduct."  *Id*. at 2102 (emphasis in original).  If a predicate statute does not apply extraterritorially, "then conduct committed abroad is not 'indictable' under that statute and so cannot qualify as a predicate under RICO's plain terms."  *Id*.[6]  The Court also held that while there is no requirement that the alleged RICO enterprise be domestic, it still must "engage in, or affect in some significant way, commerce directly involving the United States—*e.g.*, commerce between the United States and a foreign country."  136 S. Ct. at 2105.  "Enterprises whose activities lack that anchor to U.S. commerce cannot sustain a RICO violation."  *Id*.

With these legal principles in mind, the Court turns to Napout's challenge to Counts One, Nine, Ten, Eighty-Three and Eighty-Four of the Superseding Indictment.

---

[6] The Supreme Court assumed, without deciding, that the civil complaint at issue sufficiently alleged RICO claims based on violations of the money laundering and material support statutes, which "expressly provide for extraterritorial application in certain circumstances," 136 S. Ct. at 2105, and based on domestic violations of the wire fraud, mail fraud, and Travel Act statutes, none of which may be applied extraterritorially, *id*. at 2105.  The case, however, was reversed and remanded based on the Supreme Court's ruling that a private right of action under RICO must allege and prove a domestic injury to business or property.  *Id*. at 2106, 2111.

### B. Wire Fraud Conspiracy (Counts Nine and Eighty-Three)[7]

#### a. Legal Standards

As the parties recognize, the federal wire fraud statute, 18 U.S.C. § 1343, does not apply extraterritorially. (*See* Dkt. 491-1 at 11 (citing *RJR Nabisco*, 764 F.3d at 140-41); Dkt. 516 at 26-31.) It does apply "domestically," however, to certain schemes to defraud, even if those schemes also involve foreign conduct. *See RJR Nabisco*, 764 F.3d at 141-43; *see also Petroleos Mexicanos v. SK Eng'g & Constr. Co.*, 572 F. App'x 60, 61 (2014) (summary order). With respect to Napout's motion to dismiss the wire fraud conspiracy counts in which he is charged, the central inquiry therefore is whether the Superseding Indictment sufficiently alleges that Napout participated in a conspiracy to commit a "domestic" violation of the wire fraud statute.

As the Supreme Court instructed in *RJR Nabisco*, in determining whether a case involves a domestic or extraterritorial application of a given law, a court should "look[] to the statute's focus," and "[i]f the conduct relevant to the statute's focus occurred in the United States, then the case involves a permissible domestic application even if other conduct occurred abroad; but if the conduct relevant to the focus occurred in a foreign country, then the case involves an impermissible extraterritorial application regardless of any other conduct that occurred in U.S. territory." 136 S. Ct. at 2101. As further guidance, the Second Circuit instructed in *RJR Nabisco* that, "[i]f domestic conduct satisfies every essential element to prove a violation of a United States statute that does not apply extraterritorially, that statute is violated even if some further conduct contributing to the violation occurred outside the United States." 764 F.3d at 142.

---

[7] These counts charge Napout with participating in two separate wire fraud conspiracies, pursuant to 18 U.S.C. § 1349, which proscribes attempts and conspiracies to "commit any offense under this chapter," *e.g.*, the wire fraud statute, 18 U.S.C. § 1343.

The Government does not argue that the Superseding Indictment alleges a fraudulent scheme in which domestic conduct satisfies "every essential element" to prove the wire fraud underlying the conspiracy charges of Counts Nine and Eighty-Three.[8] The Government instead argues that the "focus" of the wire fraud statute is "the misuse of [U.S.] wires" (Dkt. 516 at 29), and, therefore, that the wire fraud statute can be applied "domestically" to any sequence of events satisfying the elements of wire fraud, so long as the events involved the use of U.S. telecommunications systems (*id.* (quoting *United States v. Trapilo*, 130 F.3d 547, 552-53 (2d Cir. 1997) and emphasizing that "[n]othing more is required")). By contrast, Napout asks the Court to center its analysis on the "fraudulent scheme" element of a wire fraud charge, arguing that the wire fraud statute can be applied "domestically" only if the relevant fraud scheme has its focus in the United States. (*E.g.*, Dkt. 491-1 at 17.)

As a preliminary matter, the Court does not accept Napout's proposed test for determining the bounds of a domestic application of the wire fraud statute. Contrary to Napout's construction, step two of the *RJR Nabisco* framework clearly requires the Court to determine the focus of the statute in question, not the focus of the alleged course of criminal conduct. 136 S. Ct. at 2101. At the same time, the Court is skeptical of the Government's position that "nothing more" than a single transmission across U.S. wires is sufficient to sustain a "domestic" application of the wire fraud statute. This extreme position appears to be foreclosed by the Second Circuit's decision in *Petroleos Mexicanos*, which held that "three minimal contacts" with the United States—including the use of U.S. wires to transfer of illicit funds—were insufficient to establish a domestic application of the wire fraud statute. 572 F. App'x at 61. The natural implication of *Petroleos*

---

[8] The essential elements of wire fraud are "[i] a scheme to defraud, [ii] money or property as the object of the scheme, and [iii] use of the . . . wires to further the scheme." *United States v. Binday*, 804 F.3d 558, 569 (2d Cir. 2015) (quotation omitted).

*Mexicanos* is that, in determining whether the wire fraud statute is being applied "domestically" or "extraterritorially" in a given case, a court must conduct a more holistic assessment of the conduct that constitutes the alleged fraud scheme, including consideration of whether the scheme involves only incidental or minimal use of U.S. wires. *Id.*[9]

During oral argument, the Government maintained that its proposed test for determining the bounds of the wire fraud statute is established in a long line of criminal cases, including most notably *United States v. Kim*, 246 F.3d 186 (2d Cir. 2001), and that *Petroleos Mexicanos* should not be construed to disturb that line of cases because (i) *Petroleos Mexicanos* was a civil RICO case that did not closely analyze the wire-fraud predicate underlying the RICO claim in that case, and (ii) the Second Circuit's extraterritoriality analysis in *Petroleos Mexicanos* resembles a "conduct and effects" analysis that, according to the Government, is forbidden by the Supreme Court's recent extraterritoriality decisions. The Court finds some merit to the Government's arguments on this front. The Court also observes, however, that notwithstanding the Government's effort to distinguish it, *Petroleos Mexicanos* appears to be the most recent Second Circuit decision passing upon the "domestic" reach of the wire fraud statute, albeit in the course of analyzing a RICO claim, and the Court does not believe the Supreme Court's decision in *RJR Nabisco*—which expressly declined to address the domestic reach of the wire fraud statute, 136 S. Ct. at 2105—undermines the force or vitality of *Petroleos Mexicanos*. The Court further

---

[9] The government argues that this kind of "balancing" approach is "expressly forbidden" by the Supreme Court's decision in *RJR Nabisco*. (Dkt. 516 at 42.) The Court disagrees. In *RJR Nabisco*, the Supreme Court did not articulate a precise test for determining a statute's "focus," *RJR Nabisco*, 136 S. Ct. at 2101 (finding no need to determine the "focus" of the RICO statute, because, "[u]nlike in *Morrison* and *Kiobel*, we find that the presumption against extraterritoriality has been rebutted" for certain applications of RICO)—thereby leaving in place the standards applied by the Supreme Court in *Morrison* and *Kiobel* (which in turn were applied by the Second Circuit in *RJR Nabisco* and *Petroleos Mexicanos*) as the proper guideposts for making this determination. *See RJR Nabisco*, 136 S. Ct. at 2099-2101.

observes that, were the Government correct that the domestic reach of the wire fraud statute was firmly established in a long line of criminal cases, the Second Circuit presumably would have followed that line of cases in *RJR Nabisco*, rather than stating, as it did, that it "need not now decide precisely how to draw the line between domestic and extraterritorial applications of the wire fraud statute."  764 F.3d at 141.

Given the nature and extent of the Superseding Indictment's allegations of conduct in the United States, at this stage the Court need not, and declines to, articulate a general test for whether a given application of the wire fraud statute is extraterritorial or domestic.  As explained below, regardless of whether the correct test is the bright-line test proposed by the Government or the more holistic analysis implied by *Petroleos Mexicanos*, the Superseding Indictment more than adequately alleges Napout's involvement in a conspiracy to commit a domestic violation of the wire fraud statute.

### b.  Analysis

Count Nine charges Napout with participating in a conspiracy to commit wire fraud in connection with a fraudulent scheme described in the Superseding Indictment as "CONMEBOL Copa Libertadores Scheme #2."  According to the Superseding Indictment, this scheme involved various bribe and kickback arrangements between sports marketing companies and officers of CONMEBOL (including  Napout) relating to CONMEBOL's sale of broadcasting rights to the Copa Libertadores, an international soccer tournament that CONMEBOL has organized annually since 1960.  As relevant to Napout's motion, the Superseding Indictment alleges that this scheme involved sales of broadcasting rights in the United States (SI ¶ 174), the organizing of soccer matches in the United States (SI ¶ 175), the holding of meetings in the United States (SI ¶ 185), and the use of wire facilities and financial institutions located in the United States, among other

countries, to make and receive bribe payments and to transfer payments related to contracts secured through bribery (SI ¶ 185).

The Superseding Indictment also alleges significant conduct related to this scheme without identifying the location where the conduct occurred, including conversations concerning bribery and kickback arrangements (SI ¶¶ 179, 183), the solicitation and receipt of bribery payments (SI ¶¶ 182-84), entering into contracts concerning broadcasting rights (SI ¶ 180), and transfers of funds in connection with bribes and kickbacks (SI ¶¶ 178-79).

Count Eighty-Three charges Napout with participating in a conspiracy to commit wire fraud in connection with a fraudulent scheme described in the Superseding Indictment as "CONMEBOL/CONCACAF Copa America Centenario Scheme." According to the Superseding Indictment, this scheme involved various bribes paid to officers of CONMEBOL (including Napout) relating to CONMEBOL's distribution of commercial rights with respect to the annual Copa America tournament. As relevant to Napout's motion, the Superseding Indictment alleges that this scheme involved sales of broadcasting and other commercial rights in the United States (SI ¶¶ 155-57, 341), the use of financial institutions in the United States to transfer funds associated with paying bribes to CONMEBOL officers (SI ¶ 349), holding the centennial edition of the Copa America in the United States (SI ¶ 352), announcing in the United States the decision to hold the centennial edition of the Copa America in the United States (SI ¶ 353), and phone calls and meetings in the United States related to the bribery of CONMEBOL officials (SI ¶¶ 356, 360).

The Superseding Indictment also alleges that significant conduct related to this scheme occurred outside the United States, including meetings in Buenos Aires and London (SI ¶¶ 345, 347), wire transfers from banks located in Switzerland to other banks located outside the United

States (SI ¶ 350), and negotiations conducted in foreign countries concerning broadcasting and other commercial rights in foreign countries (*see, e.g.*, SI ¶¶ 347-48).

Considered in their entirety, these allegations are more than sufficient to allege conspiracies to commit domestic violations of the wire fraud statute, as to both the CONMEBOL Copa Libertadores Scheme #2 (Count Nine) and the CONMEBOL/CONCACAF Copa America Centenario Scheme (Count Eighty-Three). As detailed above, with respect to Counts Nine and Eighty-Three, the Superseding Indictment alleges significantly more than an incidental or minimal use of U.S. wires in furtherance of otherwise foreign schemes to defraud. The wire fraud schemes charged in Counts Nine and Eighty-Three involved conspiracies for sports marketing companies (some of which were based in the United States) to pay bribes (some of which were transmitted through U.S. wires) to Napout and other FIFA officials in exchange for commercial rights to televise and host FIFA soccer matches in various countries, including the United States. To be sure, the alleged fraud schemes extended beyond the United States—and may very well have had their centers of gravity outside the United States—but the schemes' contacts with the United States were substantial, and the U.S. wires were an integral part of the overall schemes. The Court therefore holds that Counts Nine and Eighty-Three sufficiently plead domestic applications of the wire fraud statute. *See RJR Nabisco*, 764 F.3d 129, 142 (finding allegations that defendants "hatched schemes to defraud in the United States, and that they used the U.S. mails and wires in furtherance of those schemes and with the intent to do so" clearly stated domestic cause of action for wire fraud).

Napout's contention that the Superseding Indictment fails to allege a domestic wire fraud violation as to him because it does not specifically allege his involvement in any act in

the United States (Dkt. 491-1 at 15-17)[10] fundamentally misunderstands the law and the nature

of the wire fraud charges against him.  Napout is charged with participating in a conspiracy

pursuant to which he allegedly agreed with others to perpetrate a fraud scheme that involved

the use of U.S. wire facilities and banks to transmit bribe payments to him and his

co-conspirators.  (SI ¶¶ 174-83, 341-63.)  As an alleged member of the wire fraud conspiracy,

Napout need not personally have taken any of these actions; rather, he need only have agreed

to further "the general criminal objective of [this] jointly undertaken scheme," *Yannotti*, 541 F.3d

at 122, where a co-conspirator's use of U.S. wires in furtherance of the scheme "was reasonably

foreseeable," *United States v. Zichettello*, 208 F.3d 72, 105 (2d Cir. 2000).[11]

Napout argues that even applying the "focus" analysis, the domestic wire fraud charges are

not sufficiently alleged because "the government references only three transfers from United States

---

[10] In his reply, Napout advances a variant of this argument.  He asserts that the indictment is deficient as to him because it fails to allege "essential facts" establishing the elements of a domestic wire fraud violation, instead alleging only "bare conclusions."  (Dkt. 520 at 6.)  This argument similarly fails because it misstates, based on no authority, the pleading requirements for an indictment, seemingly applying a civil plausibility pleading standard, and merges the requirements for a criminal charging instrument with proof of criminal culpability.  Clearly, at the charging or indictment stage, the government is not required to allege facts that fully substantiate the criminal charge nor identify how it intends to prove those charges.  *See* Fed. R. Crim. P. 7(c)(1); *Flaharty*, 295 F.3d at 198.  In any event, the Superseding Indictment, with its 361 paragraphs of factual allegations, more than satisfies the applicable pleading requirements.  To the extent Napout is seeking more specifics about his alleged misconduct, that is not a basis for finding a failure to state a charge, but might, as discussed below, support a motion for a bill of particulars.

[11] Napout cites a lone decision, *United States v. Lloyds TSB Bank PLC*, 639 F. Supp. 2d 314 (S.D.N.Y. 2009), in support of his argument that the indictment must allege specific conduct by Napout in the United States.  (Dkt. 491-1 at 17.)  However, *Lloyds TSB Bank* is clearly distinguishable.  In *Lloyds TSB Bank*, the district court found that the indictment failed to even allege that the defendant bank was part of the charged money laundering conspiracy. 639 F. Supp. 2d at 319 (finding that complaint did not allege that defendant bank participated in the charged securities fraud conspiracy, and, at most, alleged that the bank conspired with one depositor to launder his fraud proceeds).  Here, the Superseding Indictment expressly and specifically alleges that Napout participated in two of the charged wire fraud and money laundering conspiracies, as well as the RICO conspiracy.  (*See* SI ¶¶ 178-84, 342, 348, 363, 379, 502.)

banks, while averring that banks all over the world were used." (Dkt. 491-1 at 17 (citing *Petroleos Mexicanos*, 572 F. App'x. at 61).) The Court disagrees. Indeed, the Second Circuit's reasoning in *Petroleos Mexicano* supports the conclusion that the Superseding Indictment adequately states the domestic wire fraud violations with which Napout is charged. In *Petroleos Mexicano*, the Circuit found that the "three minimal contacts with the United States" alleged as part of the wire fraud scheme were insufficient due to the "absen[ce] [of] . . . any allegations that the scheme was directed from (or to) the United States." *Id.* Here, there are numerous allegations about the wire fraud conspiracies charged in Counts Nine and Eighty-Three being directed from or to the United States. (*See*, *e.g.*, SI ¶¶ 3, 177, 185, 342, 344, 345, 349, 352, 353, 356-58.)

Accordingly, Napout's motion is denied with respect to Counts Nine and Eighty-Three.

## C. Money Laundering Conspiracy (Counts Ten and Eighty-Four)

Napout is charged in Counts Ten and Eighty-Four with participating in two separate money laundering conspiracies, in violation of 18 U.S.C. § 1956(a)(2)(A).

### a. Legal Standards

Title 18, United States Code, Section 1956(a)(2)(A) provides that:

Whoever transports, transmits or transfers . . . a monetary instrument or funds from a place in the United States to or through a place outside the United States or to a place in the United States from or through a place outside the United States--with the intent to promote the carrying on of specified unlawful activity [is guilty of a crime].

Significantly, Section 1956(f) provides that:

There is extraterritorial jurisdiction over the conduct prohibited by this section if—

(1)     the conduct is by a United States citizen or, in the case of a non-United States citizen, the conduct occurs in part in the United States; and

(2)     the transaction or series of related transactions involves funds or monetary instruments of a value exceeding $10,000.

Thus, unlike the wire fraud statute, the federal money laundering statute contains a provision specifying the circumstances in which it can be applied extraterritorially, and thus overcomes the presumption against extraterritoriality.  18 U.S.C. § 1956(f); *see RJR Nabisco*, 764 F.3d at 139 ("Applying *Morrison*'s presumption against extraterritoriality to [money laundering and material support] statutes, we conclude that . . . both apply extraterritorially under specified circumstances . . . .").

### b.  Analysis

While the government primarily argues that the money laundering conspiracy charges against Napout in Counts Ten and Eighty-Four constitute domestic applications of Section 1956(a)(2) (Dkt. 516 at 40-42), the Court does not adopt this interpretation of the statute[12] and instead finds, as the government has alternatively argued (Dkt. 516 at 42 n.25), that these counts adequately allege extraterritorial applications of the statute, pursuant to Section 1956(f). In addition to satisfying the elements of Section 1956(a)(2), the allegations supporting Counts Ten and Eighty-Four, *i.e.*, allegations that the subject monetary transfers originated or terminated in the United States (SI ¶¶ 174-85, 341-60, 381, 504), also satisfy subsection (f)'s requirement of

---

[12] The Court finds that the government's characterization of the money laundering charges in this case as "domestic" applications of the statute would thwart Congress's intent, embodied in Section 1956(f), to impose a $10,000 threshold on prosecutions that target non-U.S. citizens for money laundering offenses that occur in part in the United States.  *See United States v. Chi Tong Kuok*, 671 F.3d 931, 940 (9th Cir. 2012) (noting that government's argument that money laundering charges based on similar facts constituted domestic applications of Section 1956(a) "would render subsection (f) a nullity").  While it could be argued that subsection (f) does not apply to prosecutions made pursuant to Section 1956(a)(2), which by its terms applies to money laundering transactions that originate or terminate in the United States without regard to a monetary threshold, *see* 18 U.S.C. § 1956(a)(2), the plain language of subsection (f) indicates that it applies with equal force to "[any of] the conduct prohibited by [Section 1956]," 18 U.S.C. § 1956(f).  Thus, the Court finds that where, as here, the government seeks to charge a Section 1956(a)(2) money laundering offense against a foreign defendant, the application of the statute is extraterritorial, and the charging instrument must include allegations that meet all of the elements of the charged offense under the section, as well as subsection (f).

"conduct [that] occur[ed] *in part* in the United States." 18 U.S.C. § 1956(f) (emphasis added); *see also United States v. Garcia*, 533 F. App'x 967, 982 (11th Cir. 2013); *United States v. Approx. $25,829,682.80 in Funds*, No. 98 Civ. 2682, 1999 WL 1080370, at *3 (S.D.N.Y. Nov. 30, 1999). The Superseding Indictment also adequately alleges that the $10,000 threshold of subsection (f) is met. (SI ¶¶ 178, 185, 349.)

Napout argues that "[n]otwithstanding [the] [c]ongressional directive" in 18 U.S.C. § 1956(f), the money laundering statute cannot be applied to him extraterritorially because the "specified unlawful activity" that allegedly gave rise to the allegedly laundered funds—*i.e.*, wire fraud (SI ¶¶ 379, 502)—is extraterritorial conduct that is beyond the reach of the wire fraud statute. (Dkt. 491-1 at 12-14 (citing *United States v. Prevezon Holdings Ltd.*, 122 F. Supp. 3d 57 (S.D.N.Y. 2015)).) However, having concluded that the Superseding Indictment adequately alleges domestic violations of the wire fraud statute, *supra*, the Court has no trouble finding that those domestic violations qualify as "specified unlawful activity" for purposes of the money laundering counts against Napout.[13]

Lastly, the Court rejects Napout's argument (Dkt. 491-1 at 19-20) that an extraterritorial application of the money laundering statute would be unreasonable in the circumstances, both because Congress expressly commanded such an application, *see* 18 U.S.C. § 1956(f), and because

---

[13] The Court notes that Napout's argument is premised on his assertion that in order for Section 1956 to be applied extraterritorially, the underlying specified unlawful activity must be a proper extraterritorial application of a criminal statute. (Dkt. 491-1 at 14.) Napout cites no authority for this proposition, and the Government does not address it. The Court, however, finds nothing in Section 1956 or elsewhere that would support such an interpretation of the statute's extraterritorial application. Rather, Section 1956(f), which explicitly sets forth the requirements for Section 1956's extraterritorial application, does not indicate in any way that the underlying specified unlawful activity must also be extraterritorial in nature. The Court therefore rejects the contention that the money laundering statute may be applied extraterritorially only if it is based on an unspecified unlawful activity that is also properly charged extraterritorially.

Napout has not made a showing of unreasonableness under the governing legal test, *see Gucci Am., Inc. v. Weixing Li*, 768 F.3d 122, 140 (2d Cir. 2014).[14]

Accordingly, the Court denies Napout's motion to dismiss Counts Ten and Eighty-Four.

## D. RICO Conspiracy (Count One)

### a. Legal Standards

As discussed, in *RJR Nabisco*, 136 S. Ct. 2090 (2016), the Supreme Court clarified the extent to which the federal RICO statute applies extraterritorially. As relevant to Napout's motion, *RJR Nabisco* held that "the prohibitions in 18 U.S.C. §§ 1962(b) and (c) . . . apply extraterritorially in tandem with the underlying predicates, without regard to the locus of the enterprise." 136 S. Ct. at 2105. Although the Supreme Court deferred ruling on whether the same principle of extraterritoriality applies to the conspiracy provisions of the federal RICO statute, *see* 136 S. Ct. at 2103, this Court discerns no reason to apply a different rule.

The Supreme Court in *RJR Nabisco* also rejected the argument that while RICO applies to some foreign racketeering activity, it does not apply to foreign enterprises, and requires a "domestic enterprise." 136 S. Ct. at 2104. As *RJR Nabisco* made clear, the domestic and extraterritorial bounds of the federal RICO statute are coextensive with the underlying predicate statutes relied upon in a given case, and "the location of the affected enterprise does not impose an independent constraint." *Id.* However, as previously discussed, the Supreme Court found that the alleged RICO enterprise "must engage in, or affect in some significant way, commerce directly

---

[14] Rather, Napout argues in conclusory fashion that an extraterritorial application of the money laundering statute would be "unreasonable" because of (i) "the lack of any alleged conduct of Napout within the United States," and (ii) "the obvious interest Paraguay would have in regulating Napout's alleged conduct." (Dkt. 491-1 at 19.)

involving the United States—*e.g.*, commerce between the United States and a foreign country." *Id.* at 2105.

### b. Analysis

The principles of extraterritoriality for RICO offenses articulated by the Supreme Court in *RJR Nabisco* dictate a finding that Count One of the Superseding Indictment is a permissible application of the RICO statute as to Napout. (SI ¶¶ 362-64.)

As discussed, the domestic and extraterritorial reach of the RICO statute is coterminous with that of the underlying predicate offenses in a given case. Here, the money laundering conspiracies charged against Napout as predicates to the RICO conspiracy in Count One have extraterritorial application, and the wire fraud conspiracies charged against Napout constitute domestic applications of the wire fraud statute. *See supra.* Thus, Count One properly charges a RICO conspiracy as to Napout based on extraterritorial applications of the money laundering statute and domestic applications of the wire fraud statute, as predicate offenses. *See RJR Nabisco*, 136 S. Ct. at 2106 (finding no "impermissibly extraterritorial application of RICO" where pattern of racketeering activity consisted of predicate offenses either committed in the United States in violation of a statute that applies domestically—*i.e.*, domestic applications of the wire fraud, mail fraud, and Travel Act statutes—or committed in a foreign country in violation of a predicate statute that applies extraterritorially—*i.e.*, extraterritorial applications of the money laundering and material support statutes); *see also RJR Nabisco*, 764 F.3d at 140-41 (finding that complaint alleged sufficient domestic conduct for mail fraud, wire fraud, and Travel Act violations to sustain application of RICO, despite predicates not applying extraterritorially, and finding that complaint

alleged conduct satisfying extraterritorial requirements of money laundering statute to support extraterritorial application of RICO).[15]

Napout's argument that insufficient minimal contacts were alleged in the Superseding Indictment to establish jurisdiction for the RICO conspiracy charge relies on case law that has been rendered obsolete by the Supreme Court's decision in *RJR Nabisco*. (Dkt. 491-1 at 17-18.) As noted above, in *RJR Nabisco*, the Supreme Court clarified that the criminal prohibitions of the RICO statute "apply extraterritorially in tandem with the underlying predicates, without regard to the locus of the enterprise." 136 S. Ct. at 2105. Having found that the predicate wire-fraud and money-laundering underlying Count One extend to Napout's alleged conduct, *supra*, the Court correspondingly finds, under *RJR Nabisco*, that the RICO statute also extends to that alleged conduct.[16]

Accordingly, the Court denies Napout's motion to dismiss Count One of the Superseding Indictment as to him.

---

[15] Furthermore, as the Government has noted, the RICO conspiracy alleged in Count One also is based on other predicate acts that are being applied extraterritorially, such as 18 U.S.C. § 1512 (obstruction of justice and obstruction of justice conspiracy). Even though Napout is not named in these predicate acts, they provide an additional basis for finding that Count One is a properly charged extraterritorial application of the RICO statute. *See Yannotti*, 541 F.3d at 121-22 ("The partners in [a criminal conspiracy] . . . may divide up the work, yet each is responsible for the acts of the other.").

[16] Napout's argument that Count One should be dismissed because the Superseding Indictment does not plead facts showing that "the United States was the 'focus' of the [alleged] wire fraud or money laundering" (Dkt. 491-1 at 17) misconstrues the two-part test set forth in *RJR Nabisco*. Under *RJR Nabisco*, a court determines what conduct is the focus of a given *statute*, and then asks whether that focused-upon conduct occurred in the United States. *RJR Nabisco*, 136 S. Ct. at 2101. As previously discussed and contrary to Napout's argument, this determination does not involve identifying the "focus" of an alleged course of criminal conduct, such as an alleged scheme or conspiracy.

### III.    Napout's Motion for a Bill of Particulars

Napout also moves under Fed. R. Crim. P. 7(f), for an order requiring the government to file a bill of particulars specifying certain details of the charges pending against him.  (Dkt. 490 at 1; Dkt. 490-1 at 2.)

An order requiring a bill of particulars is appropriate where the information requested is necessary to the preparation of the defense, and to avoid unfair surprise at trial.  *United States v. Torres*, 901 F.2d 205, 234 (2d Cir. 1990).  This Court has wide discretion in deciding whether to grant Napout's motion based on its consideration of the charges and allegations pleaded in the indictment, the discovery produced thus far in the case, Napout's and his counsel's interest in preparing a defense, and the government's concern that a bill of particulars may be used unfairly to obtain pre-trial discovery or a preview of its case.  *See United States v. Bortnovsky*, 820 F.2d 572, 574 (2d Cir. 1987); *United States v. Bin Laden*, 92 F. Supp. 2d 225, 233-34 (S.D.N.Y. 2000).

In consideration of these factors, the Court denies in part and grants in part Napout's motion, as follows.  No later than March 10, 2017, the Government shall file a bill of particulars specifying the transactions—for example, the marketing contracts, broadcasting contracts, tournament hosting designations, etc.—that the Government will seek to prove were tainted by an unlawful conspiracy of which Napout was a part.  Without a detailed list of those allegedly tainted transactions,  Napout and his counsel will be in the same position as the criminal defendants who were deemed entitled to bills of particulars in *United States v. Bortnovsky*, 820 F.2d 572 (2d Cir. 1987), and *United States v. Nachamie*, 92 F. Supp. 2d 565 (S.D.N.Y. 2000):  accused of having committed unlawful acts in connection with a category of transactions, but without being given notice of which specific transactions falling within that category are alleged to have been tainted by unlawful conduct.  *See Bortnovsky*, 820 F.2d at 574-75 (vacating convictions for

insurance fraud where Government did not identify before trial "which of some fifteen" insurance submissions "would be demonstrated to be [false]"); *Nachamie*, 91 F. Supp. 2d at 574 (granting request for bill of particulars specifying which of more than 2,000 Medicare claims the Government would seek to prove were false).

Napout's motion for a bill of particulars is otherwise denied as seeking information beyond that required to prepare a defense. Although Napout might like to know now what witnesses and documents the Government intends to present at trial, the Federal Rules of Criminal Procedure do not entitle him to that information at this juncture. Likewise, the Court holds that, so long as the Government complies with this Order, Napout will have sufficient information to prepare a defense even without identification of the unnamed co-conspirators who, according to the Government, were involved in conspiracies affecting the same transactions.

## CONCLUSION

For the foregoing reasons, the Court denies Marin's motion to dismiss Count One, denies Napout's motion to dismiss the counts against him, and denies in part and grants in part Napout's motion for a bill of particulars. The Government shall file the bill of particulars required by this Order no later than March 10, 2017.

SO ORDERED.

*/s/ Pamela K. Chen*
Pamela K. Chen
United States District Judge

Dated: February 17, 2017
　　　Brooklyn, New York

22