SPN/PTH/KTF/VAZ
F. #2015R00747

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - X

UNITED STATES OF AMERICA

     - against -                    Docket No. <u>15-CR-252 (S-3) (PKC)</u>

FULL PLAY GROUP S.A., <u>et al.</u>,

              Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - X

<u>THE GOVERNMENT'S MEMORANDUM IN OPPOSITION TO THE DEFENDANTS'
MOTIONS FOR FED. R. CRIM. P. 17 SUBPOENAS AND LETTERS ROGATORY</u>

BREON PEACE
UNITED STATES ATTORNEY
Eastern District of New York
271 Cadman Plaza East
Brooklyn, New York 11201

Samuel P. Nitze
Patrick T. Hein
Kaitlin T. Farrell
Victor A. Zapana
Assistant U.S. Attorneys
     (Of Counsel)

TABLE OF CONTENTS

TABLE OF AUTHORITIES ........................................................................................... i

PRELIMINARY STATEMENT ...................................................................................... 1

BACKGROUND ............................................................................................................. 2

    I.       May 2015, the First FIFA Indictment, and the First FIFA Trial ....................... 2

    II.      The Third Superseding Indictment ................................................................... 4

    III.    Relevant Documents Obtained During the Government's Investigation and
            Subsequently Produced to the Defendants ....................................................... 5

    IV.    The Defendants' Previous Motions and Arguments Regarding Mr. Burzaco's
            Devices ............................................................................................................. 6

    V.      The Defendants' Pending Discovery Motions................................................... 8

         A.    Lopez and Martinez's Subpoenas ................................................................ 8

         B.    Full Play's Subpoenas and Letters Rogatory ............................................... 8

ARGUMENT .................................................................................................................. 9

    I.       Lopez and Martinez's Subpoenas Should Be Denied ...................................... 9

         A.    The Requested Subpoenas Are Quintessential Fishing Expeditions, Which
              the Law Prohibits ......................................................................................... 9

         B.    The Defendants' Complaints About the Government's Investigation Are
              Untrue, and Not a Basis for Issuing the Requested Subpoenas ................. 14

         C.    The Stored Communications Act Precludes the Requested Subpoenas .... 18

    II.      Full Play's Subpoenas and Letters Rogatory Should be Denied .................... 20

CONCLUSION............................................................................................................... 22

TABLE OF AUTHORITIES

**Cases**

Bowman Dairy Co. v. United States,
   341 U.S. 214 (1951)......................................................................................................... 9

Brady v. Maryland,
   373 U.S. 83 (1963)................................................................................................... 8, 15, 16

Crispin v. Christian Audigier, Inc.,
   717 F. Supp. 2d 965 (C.D. Cal. 2010) ........................................................................ 18

Facebook, Inc. v. Wint,
   199 A.3d 625 (D.C. 2019) ............................................................................................ 19

Giglio v. United States,
   405 U.S. 150 (1972)................................................................................................... 8, 15

In re Zynga Privacy Litig.,
   750 F.3d 1098 (9th Cir. 2014) ..................................................................................... 18

United States v. Barcelo,
   No. 13-CR-38 (RJS), 2014 WL 4058066 (S.D.N.Y. Aug. 15, 2014)........................ 15

United States v. Barnett,
   No. 05-CR-1007 (JFK), 2006 U.S. Dist. LEXIS 54170 (S.D.N.Y. Aug. 3, 2006).................. 14

United States v. Bergstein,
   788 F. App'x 742 (2d Cir. 2019) ................................................................................. 13

United States v. Bergstein,
   No. 16-CR-746 (PKC), 2017 WL 6887596 (S.D.N.Y. Dec. 28, 2017) .................... 11

United States v. Binday,
   F. Supp. 2d 485 (S.D.N.Y. 2012)................................................................................ 18

United States v. Brown,
   No. 95-CR-168 (AGS), 1995 WL 387698 (S.D.N.Y. June 30, 1995)...................... 10

United States v. Carton,
   No. 17-CR-680 (CM), 2018 WL 5818107 (S.D.N.Y. Oct. 19, 2018) ................ 14, 15

United States v. Chen De Yian,
   No. 94-CR-719 (DLC), 1995 WL 614563 (S.D.N.Y. Oct. 19, 1995) .......... 10, 11, 21

United States v. Cole,
   No. 19-CR-869 (ER), 2021 WL 912425 (S.D.N.Y. Mar. 10, 2021) ........................ 11

United States v. Columbo,
   No. 04-CR-273(NRB), 2006 WL 2012511 (S.D.N.Y. July 18, 2006) ................................... 20

United States v. Coriaty,
   No. 99-CR-1251 (DAB), 2000 WL 1099920 (S.D.N.Y. Aug. 7, 2000) .................................. 12

United States v. Garcia,
   509 F. App'x 40 (2d Cir. 2013) .................................................................................... 16

United States v. Giampa,
   No. 92-CR-437 (PKL), 1992 WL 296440 (S.D.N.Y. Oct. 7, 1992) ..................................... 11

United States v. Graham,
   484 F.3d 413 (6th Cir. 2007) ....................................................................................... 15

United States v. Hatfield,
   No. 06-CR-550 (JS), 2009 WL 2030350 (E.D.N.Y. July 14, 2009) ....................................... 14

United States v. Hunt,
   534 F. Supp. 3d 233 (E.D.N.Y. 2021) ............................................................................ 16, 19

United States v. Iozia,
   13 F.R.D. 335 (S.D.N.Y. 1952) .................................................................................... 11

United States v. Jasper,
   No. 00-CR-825 (PKL), 2003 WL 1107526 (S.D.N.Y. Mar. 13, 2003) ............................. 11, 18

United States v. Kaufman,
   No. 13-CR-411 (JMF), 2014 WL 2048198 (S.D.N.Y. May 19, 2014) .................................. 18

United States v. Khan,
   No. 06-CR-255 (DLI), 2009 WL 152582 (E.D.N.Y. Jan. 20, 2009) ....................................... 14

United States v. Louis,
   No. 04-CR-203 (LTS), 2005 WL 180885 (S.D.N.Y. Jan. 27, 2005) .................................. 9, 10

United States v. Mendinueta-Ibarro,
   956 F. Supp. 2d 511 (S.D.N.Y. 2013) ............................................................................ 13

United States v. Meregildo,
   920 F. Supp. 2d 434 (S.D.N.Y. 2013) ............................................................................ 15

United States v. Nektalov,
   No. 03-CR-828 (PKL), 2004 WL 1574721 (S.D.N.Y July 14, 2004) ............................. 10, 11

United States v. Nixon,
   418 U.S. 683 (1974).................................................................................................. passim

United States v. Pierce,
    785 F.3d 832 (2d Cir. 2015)........................................................................ 19

United States v. Raineri,
    670 F.2d 702 (7th Cir. 1982) ..................................................................... 11

United States v. RW Pro. Leasing Servs. Corp.,
    228 F.R.D. 158 (E.D.N.Y. 2005) ............................................................... 10

United States v. Saldarriaga,
    204 F.3d 50 (2d Cir. 2000).......................................................................... 15

United States v. Tadros,
    310 F.3d 999 (7th Cir. 2002) ...................................................................... 15

United States v. Ulbricht,
    858 F.3d 71 (2d Cir. 2017).......................................................................... 13

United States v. Vasquez,
    258 F.R.D. 68 (E.D.N.Y. 2009) ....................................................... 11, 12, 14

United States v. Wenk,
    319 F. Supp. 3d 828 (E.D. Va. 2017) ........................................................ 19

**Statutes**

Stored Communications Act,
    18 U.S.C. §§ 2702 et seq............................................................... 1, 9, 18, 19

18 U.S.C. § 2702 ................................................................................................ 18

18 U.S.C. § 2703 ................................................................................................ 18

18 U.S.C. § 3500................................................................................................ 11, 14

**Rules**

Fed. R. Crim. P. 16 ................................................................................. 6, 7, 8, 17

Fed. R. Crim. P. 17 .................................................................................... passim

PRELIMINARY STATEMENT

The government respectfully submits this brief in opposition to (1) defendants Hernan Lopez and Carlos Martinez's motion for the issuance of pretrial subpoenas to Google and Yahoo for the contents of cooperating witness Alejandro Burzaco's personal email accounts pursuant to Federal Rule of Criminal Procedure 17 ("Rule 17") (see ECF Dkt. No. 1663 ("Lopez & Martinez Mot."), and (2) defendant Full Play Group's ("Full Play") motion for the issuance of Rule 17 subpoenas and letters rogatory seeking broad categories of information from certain sports media companies and soccer confederations (see ECF Dkt. No 1657 ("FPG Mot.")).  The motions are meritless and should be denied.

Lopez and Martinez's motion finds no support in the law and asks the Court to take the apparently unprecedented step of approving the issuance of subpoenas to third-party service providers for the entire contents of personal email accounts and requiring the government to review the results.  The request runs afoul of well-established legal principles, including Rule 17's basic requirements of relevancy, admissibility, and specificity.  The subpoenas proposed by Lopez and Martinez seek Court approval of the sort of fishing expedition precluded by United States v. Nixon, 418 U.S. 683 (1974), and its progeny.  They are neither time-limited nor topic-limited, and they improperly seek to force the government to pursue investigative avenues at the defendants' behest, without factual basis or legal authority.  The requested subpoenas also are precluded by the Stored Communications Act ("SCA"), 18 U.S.C. §§ 2702 et seq., which governs the disclosure of stored wire and electronic communications by third-party service providers and affords no mechanism for the relief sought by Lopez and Martinez.

Full Play's proposed subpoenas and letters rogatory are also fundamentally flawed.  Certain of the letters rogatory incorrectly articulate the government's charging theory and seek irrelevant information on that basis.  The proposed subpoenas and letters rogatory also seek broad,

poorly defined categories of information, some of which the government has already provided.[1]
Full Play's requests thus fail to satisfy the strict standard required under Rule 17 to specifically
identify the materials sought and show their relevance and admissibility.

In light of the foregoing, and for the reasons discussed further below, the motions
should be denied.

## BACKGROUND

I.    May 2015, the First FIFA Indictment, and the First FIFA Trial

The first indictment in this case was unsealed on May 27, 2015, in connection with
the arrests of several defendants in Zurich, Switzerland, where various soccer officials and sports
marketing executives had gathered in advance of the 65th FIFA Congress. The indictment charged
14 defendants with racketeering conspiracy and wire fraud and money laundering offenses, among
other crimes relating to the corruption of international soccer. See generally ECF Dkt. No. 1.[2]

Among those charged in the first indictment was Alejandro Burzaco, the CEO of
Argentina-based sports marketing and production company Torneos y Competencias, SA
("Torneos"). The government proffers the following facts relating to Mr. Burzaco's conduct
during the days following the unsealing of the first indictment, many of which Mr. Burzaco
testified to during the first trial in this case, held in November and December of 2017, or would
testify to if questioned further on the subject. See, e.g., Trial Tr. 589-92, 927-30. On May 27,
2015, Mr. Burzaco was present at the hotel Bar Au Lac in Zurich, Switzerland, when certain

___

[1] In some instances, Full Play fails adequately to define the entities from which it seeks
information. For example, Full Play's proposed letter rogatory to CONMEBOL apparently seeks
records and salary information belonging to Confederation of North, Central America and
Caribbean Association Football ("CONCACAF"). See ECF Dkt. No. 1657-3.

[2] Subsequent, superseding indictments were returned on November 25, 2015 (S-1),
November 6, 2017 (S-2), and March 18, 2020 (S-3).

defendants charged in the first indictment were arrested.  Mr. Burzaco was not arrested, despite being present at the hotel where members of Swiss law enforcement were carrying out their operation on behalf of the United States, and Mr. Burzaco was uncertain as to his status in the case. Mr. Burzaco decided to travel to Italy, where he holds citizenship, as he began the process of engaging with counsel and deciding what to do.

Within approximately two days, Mr. Burzaco decided to turn himself in, waive extradition to the United States, and cooperate with the U.S. government's investigation.  Mr. Burzaco believed it important that he affirmatively turn himself in, rather than being apprehended before he had an opportunity to surrender, to avoid the risk that he would be misperceived as having been apprehended while on the run.  Mr. Burzaco turned himself in to the Italian authorities on approximately June 9, 2015.  During the period prior to his surrender, Mr. Burzaco provided his work BlackBerry and a personal iPhone to his attorney to ensure that his devices were preserved and that he would be able to give them to his lawyers in the United States as he addressed his case. See id. at 927-30.[3]  Mr. Burzaco regained access to the phones during a period when his attorney returned to Argentina from Italy before returning to Italy again.  At one point, in an attempt to avoid being tracked and apprehended before he turned himself in, Mr. Burzaco and his attorney attempted to disable the antennae in his phones.  Following a protracted extradition process, during which time Mr. Burzaco resided in an Italian jail and on home confinement, he arrived in the United States in July 2015.  Mr. Burzaco began proffering immediately, acknowledged his guilt, and gave the government information about his own conduct and that of various co-conspirators, including defendants Hernan Lopez, Carlos Martinez, and Full Play (the "Defendants").

---

[3] During this period, Mr. Burzaco acquired another phone that the government understands he used to communicate with counsel.

Trial on the second superseding indictment began on November 6, 2017.  Mr. Burzaco testified over a period of two days during the government's case-in-chief.  He testified extensively about the bribes that he and other co-conspirators paid to various soccer officials over a period of years and, during direct examination and on cross examination, about certain of the steps he took to turn himself in to authorities and to cooperate with the government following the unsealing of the original indictment on May 27, 2015.

II.     The Third Superseding Indictment

As alleged in the Third Superseding Indictment ("TSI"), the Defendants participated in various bribery and kickback schemes in connection with their efforts to secure the lucrative sports media and marketing rights to soccer tournaments and related events.  Full Play is charged with racketeering conspiracy, wire fraud conspiracy, wire fraud, and money laundering conspiracy in connection with its participation in the Copa Libertadores Scheme #2, the CONMEBOL World Cup Qualifiers/Friendlies Scheme, and the Copa América Scheme.  TSI ¶¶ 19, 73, 79, 81-84, 100-02, 113-15, 129-35, 146-56.  Lopez and Martinez, who served as top executives at a subsidiary of Twenty-First Century Fox, Inc. ("Fox") and were responsible for, among other things, developing Fox's sports broadcasting businesses in Latin America, see id. ¶¶ 21-22, are each charged with wire fraud conspiracy, wire fraud, and money laundering conspiracy in connection with their participation in the Copa Libertadores Scheme #2, see id. ¶¶ 72-74, 129-35.

As articulated in the TSI, and as relevant to Full Play's pending motion, the government's honest-services wire fraud theory is that soccer officials owed their respective governing organizations a fiduciary duty not to accept bribes or kickbacks in connection with their conduct as officials acting on behalf of those organizations, and that the Defendants and their co-conspirators devised and carried out schemes to defraud soccer organizations of their respective

4

rights to the honest and faithful services of the officials through payment of bribes and kickbacks. See id. ¶¶ 7, 59-65.

Trial on the TSI is scheduled to begin in five months, on May 23, 2022.

III.    Relevant Documents Obtained During the Government's Investigation and Subsequently Produced to the Defendants

Soon after Mr. Burzaco arrived in the United States in July 2015 and began cooperating with the government's investigation, the government acquired from Mr. Burzaco's counsel a set of Mr. Burzaco's credit card statements and his hard-copy calendar books dating back to 2007. During the period before Mr. Burzaco's arrival, the government had begun to collect relevant email communications, contracts, and calendar entries, among other documents, from Torneos, which was also cooperating with the government's investigation. The email communications and calendar entries came from the same work account available to and used by Mr. Burzaco on his work BlackBerry, which was backed up to Torneos' servers. It is the government's understanding that the BlackBerry device synched to the Torneos server such that the BlackBerry inbox contained an image of the inbox maintained on the Torneos server. During the course of its investigation, the government also received thousands of relevant communications and other documents from Fox, including relevant communications between and among Mr. Burzaco and defendants Martinez and Lopez. The government has produced all of these materials to the Defendants.

The government did not take custody of or search Mr. Burzaco's iPhone, BlackBerry, or SIM cards (the "chips") when he arrived in the United States. It seemed unlikely that the devices would contain information that was particularly relevant to the government's ongoing investigation and was not duplicative of the voluminous materials already available to the

government through Torneos and, later, Fox.  Mr. Burzaco's attorneys maintained custody of the devices.

IV.     The Defendants' Previous Motions and Arguments Regarding Mr. Burzaco's Devices

On August 17, 2021, Lopez and Martinez moved for issuance of a subpoena and letter rogatory seeking the BlackBerry, iPhone, and related "chips" in the possession of Mr. Burzaco's counsel and a letter rogatory to Torneos requiring the production of Mr. Burzaco's BlackBerry device.  See ECF Dkt. No. 1599-4.  On August 20, 2021, the Court initially granted the motion but later that day stayed its order at the government's request to give the government an opportunity to file a response.  See Aug. 20, 2021, Minute Orders.  On August 27, 2021, the government filed a motion to quash, arguing that the requested process was improper under applicable law but offering to review the BlackBerry, iPhone, and chips for relevant materials.  See ECF Dkt. No. 1614.  On September 3, 2021, the Court issued an order granting in part and denying in part the government's motion to quash.  See ECF Dkt. No. 1621.  Thereafter, the government arranged for delivery of the devices from Mr. Burzaco's counsel to forensic examiners, who prepared the data for review.  The government has since produced materials that are arguably discoverable under Federal Rule of Criminal Procedure 16 and obtained from the iPhone; has produced files related to the examiners' review of the BlackBerry and chips; and has offered to run further tests, within reason, on the BlackBerry and chips should defense counsel so request. The government has indicated to defense counsel that the BlackBerry was restored to factory settings on May 29, 2015, consistent with Mr. Burzaco's testimony on this point.  See Trial Tr. 928-29.

At the oral argument held on December 14, 2021, in connection with the government's pending motion to admit certain evidence and the Defendants' then-pending motions for further particulars, counsel for Lopez made a number of factually inaccurate claims regarding

6

the government's investigation to date, including with respect to Mr. Burzaco's devices, and leveled a baseless attack on the government's intentions, including the following:

- "[T]he government wanted nothing to do with that evidence [of Mr. Burzaco's communications], the evidence that would be the best way for us to try to refute this uncorroborated allegation.";[4]

- "When it comes to the best available evidence of crimes committed through Burzaco, the government steadfastly did not want to see that evidence and when we tried to get it, it tried to block us."; and

- "The Blackberry, we're told, was wiped a couple of days before Burzaco surrendered to cooperate.  So he literally began his relationship with the government by destroying evidence.  Apparently this is news to the government.  It did nothing at the time or since to recover the data that was on that device from Torneos, did nothing to retrieve his e-mails."

Dec. 14, 2021, H'rg Tr. 42-43.  As indicated above, and as must be obvious to defense counsel, the government actively worked to acquire relevant email communications relating to Mr. Burzaco's conduct, including emails and calendar entries from Torneos, the very source that backed up Mr. Burzaco's BlackBerry, along with emails and related documents from Fox, an entity incentivized to try to establish that its own executives, including defendants Lopez and Martinez, were not involved in the charged conduct.  In addition, in August of this year, the government offered to search Mr. Burzaco's iPhone and BlackBerry, and later did so, producing to the defense communications and other documents that were arguably discoverable under Rule 16.[5]

---

[4] The allegation referenced here, which defense counsel inaccurately described as "uncorroborated," is that Co-Conspirator #1 provided information to Lopez about the amount Fox would have to bid to win certain World Cup broadcasting rights and later informed Lopez that Fox would win the rights, and that Co-Conspirator #1 provided this information on account of loyalty earned through the payment to him of bribes in connection with the Copa Libertadores tournament.

[5] The government continues to review data from these devices to ensure it has disclosed all discoverable information.

V.      The Defendants' Pending Discovery Motions

A.      Lopez and Martinez's Subpoenas

Lopez and Martinez seek subpoenas to email service providers Google and Yahoo for the entire contents, without date limitation, of four personal email accounts of Mr. Burzaco. Lopez and Martinez ask that the Court make the subpoenas returnable to the government with the direction that the government review all the materials and thereafter promptly produce all materials discoverable pursuant to Rule 16, Brady and Giglio.  Lopez & Martinez Mot. at 4.  In support of this request, Lopez and Martinez attach as exhibits two nearly identical emails from the same September 2014 email chain.  See Lopez & Martinez Mot. Exs. C and D.   In this email chain, a Confederação Brasileira de Futebol ("CBF") employee sent a flight itinerary for Brazilian soccer officials and Globo executive Marcelo Pinto to one of the four personal email accounts listed in Lopez and Martinez's Motion.  See Lopez & Martinez Mot. Ex. D.  Mr. Burzaco responded, copying another Torneos employee on her Torneos email account, stating that he would send two cars.  Id.  The CBF employee replied "Ok !!!" and Mr. Burzaco replied, in Spanish, "Thanks."  Id. To the government's knowledge, the above-referenced email is the lone communication to or from Mr. Burzaco's Gmail account in all the data obtained and produced by the government.  Martinez and Lopez have not provided a single instance of Mr. Burzaco having used the other three email accounts identified in their motion for Rule 17 subpoenas.

B.      Full Play's Subpoenas and Letters Rogatory

Full Play seeks to serve subpoenas on CONCACAF and Traffic Sports USA, Inc. ("Traffic USA"), and letters rogatory directed to Torneos, Traffic Assessoria e Comunicações S/C Ltda. ("Traffic Brazil"), Traffic Sports International, Inc. ("Traffic International"), and the South American Football Confederation ("CONMEBOL") for, among other information, materials relating to fiduciary duties and codes of ethics owed to "these entities," findings regarding any

breach of such duties and/or codes, and communications with Full Play showing "these entities" knew of or condoned bribe payments.  As to CONMEBOL and CONCACAF, Full Play also seeks a broad array of contracts and salary information for directors and officers.

ARGUMENT

I.      <u>Lopez and Martinez's Subpoenas Should Be Denied</u>

        Lopez and Martinez's subpoenas should be denied.  First, their request to obtain the contents of four personal email accounts, without date limitation, is the very definition of a fishing expedition.  The defendants provide no factual support for their assertion that the accounts are likely to turn up any relevant material other than to state, with a citation to Lewis Carroll but not to cases or the record in this case, that common sense supports their position and that the government generally seeks such information "as a matter of course."  Lopez & Martinez Mot. at 3.  Second, their request that the Court direct the government to engage in a fishing expedition on their behalf finds no support in the law.  Third, even if the request had a factual predicate and was tailored to meet the requirements of Rule 17, which it is not, the proposed relief would be barred by the Stored Communications Act, which does not permit criminal defendants to subpoena third-party service providers for the contents of communications.

        A.      <u>The Requested Subpoenas Are Quintessential Fishing Expeditions, Which the Law Prohibits</u>

                1.      <u>Legal Standard</u>

        Rule 17(c) "was not intended to provide a means of discovery for criminal cases." <u>United States v. Nixon</u>, 418 U.S. 683, 700 (1974); <u>see also</u> <u>Bowman Dairy Co. v. United States</u>, 341 U.S. 214, 220 (1951) (same).  Instead, because the rule's "purpose is trial-focused," a Rule 17(c) subpoena "may be used only to obtain materials admissible as evidence at trial."  <u>United States v. Louis</u>, No. 04-CR-203 (LTS), 2005 WL 180885, at *3 (S.D.N.Y. Jan. 27, 2005).

9

Accordingly, a defendant seeking documents pursuant to a Rule 17(c) subpoena bears the burden of satisfying the "strict standard" set forth by the Supreme Court in <u>Nixon</u>, namely of "specifically identifying the materials sought and showing that they are relevant and admissible."  <u>United States v. Brown</u>, No. 95-CR-168 (AGS), 1995 WL 387698, at *9 (S.D.N.Y. June 30, 1995); <u>see also</u> <u>United States v. RW Pro. Leasing Servs. Corp.</u>, 228 F.R.D. 158, 162 (E.D.N.Y. 2005) (citing <u>Nixon</u>, 418 U.S. at 699-700); <u>Louis</u>, 2005 WL 180885, at *9 (party seeking documents pursuant to a Rule 17(c) subpoena must be able to "reasonably specify the information contained or believed to be contained in the documents sought" and establish both relevancy and admissibility (citation omitted)).

A Rule 17(c) subpoena may not be used to conduct a "general 'fishing expedition.'" <u>Nixon</u>, 418 U.S. at 700.  Indeed, precisely because the Rule poses such a risk of abuse and misuse, courts are stringent in holding those seeking to obtain documents under Rule 17(c) to their burden of demonstrating that the documents sought are (1) relevant, (2) admissible, and (3) specifically identified, and it is "insufficient" for a party to show only that the subpoenaed documents "are potentially relevant or may be admissible," <u>RW Pro. Leasing Servs.</u>, 228 F.R.D. at 162.  Requests accurately characterized as fishing expeditions "deserve[] to be quashed" on that basis alone. <u>United States v. Chen De Yian</u>, No. 94-CR-719 (DLC), 1995 WL 614563, at *2 (S.D.N.Y. Oct. 19, 1995).

Consistent with those principles, a Rule 17(c) subpoena cannot be used to obtain material that could be used only, if at all, to impeach a potential government witness.  <u>United States v. Nektalov</u>, No. 03-CR-828 (PKL), 2004 WL 1574721, at *2 (S.D.N.Y July 14, 2004) ("[D]ocuments sought solely for impeachment purposes are not the proper subject of a Rule 17(c) subpoena."); <u>United States v. Jasper</u>, No. 00-CR-825 (PKL), 2003 WL 1107526, at *2 (S.D.N.Y.

Mar. 13, 2003) (quashing defendant's subpoena for personnel files regarding a government witness where the documents were sought only for impeachment and would not have been admissible at trial); United States v. Iozia, 13 F.R.D. 335, 340 (S.D.N.Y. 1952) (Rule 17(c) cannot be used "to require in advance of trial, and in preparation for trial, a disclosure to the defendant of information which may tend to impeach persons the Government may or may not call as witnesses"). But see United States v. Cole, No. 19-CR-869 (ER), 2021 WL 912425, at *4 (S.D.N.Y. Mar. 10, 2021) (noting that Rule 17 subpoena returnable at, but not before, trial may seek impeachment material, assuming other Rule 17 conditions are met).

Rule 17(c)(2) permits this Court to quash or modify a Rule 17(c) subpoena on a motion promptly made. In addition to the subpoena's recipient, the government has standing in its own right to move to quash a subpoena "based 'upon its interest in preventing undue lengthening of the trial, undue harassment of its witness, and prejudicial over-emphasis on [the witness'] credibility.'" United States v. Giampa, No. 92-CR-437 (PKL), 1992 WL 296440, at *1 (S.D.N.Y. Oct. 7, 1992) (quoting United States v. Raineri, 670 F.2d 702, 711 (7th Cir. 1982)); see also United States v. Vasquez, 258 F.R.D. 68, 71-72 (E.D.N.Y. 2009); United States v. Nix, 251 F. Supp. 2d 555, 561 (W.D.N.Y. 2017); Nektalov, 2004 WL 1574721, at *1; Chen De Yian, 1995 WL 614563, at *2. Indeed, where the Rule 17(c) subpoena principally seeks impeachment or Section 3500 material for a key government witness, because "[t]he government has an interest in controlling the timing of disclosures" of that material, those interests "are sufficiently strong and immediate . . . to confer standing." United States v. Bergstein, No. 16-CR-746 (PKC), 2017 WL 6887596, at *3 (S.D.N.Y. Dec. 28, 2017). Moreover, even if the government does not have standing, "the Court has an independent duty to review the propriety of the subpoena – a duty in this case that requires the Court to consider whether the documents sought are privileged and

11

whether the subpoena itself comports with the requirements of Rule 17." Vasquez, 258 F.R.D. at 72; see also United States v. Coriaty, No. 99-CR-1251 (DAB), 2000 WL 1099920, at *6 n.4 (S.D.N.Y. Aug. 7, 2000) (considering government's motion to quash third-party subpoena, notwithstanding defendant's objections on ground that government had no standing, because "it is the responsibility of the court, not the opposing party, to ensure that a subpoena secured under Rule 17(c) is for a proper purpose" (citation omitted)).

        2.   Discussion

Lopez and Martinez's request could hardly be less tailored to meet the requirements of Rule 17. They have identified no document or other evidence that they seek through these subpoenas – no email exchange, no contract, no admissible evidence – with any specificity whatsoever. Lopez and Martinez assert that "[t]he discovery recently provided by the government has made clear that . . . Burzaco . . . used a number of personal email addresses to correspond with relevant parties about the facts and events underlying the TSI," but that is not at all what the discovery shows. Lopez & Martinez Mot. at 1. Indeed, Lopez and Martinez have identified nothing in the discovery reflecting any use, let alone work-related use, by Mr. Burzaco of three of the four email addresses identified in their motion. With respect to the fourth account, Lopez and Martinez have identified a single email chain, attached to their motion as Exhibit D,[6] in which a Gmail account of Mr. Burzaco's was used. Lopez and Martinez offer no discussion of its relevance to their defense, let alone its materiality, nor do they explain how the presence of the single email in the discovery materials suggests that further such emails, or emails actually relevant to their defenses, are likely to be found in the specified account. See, e.g., United States v. Mendinueta-

---

      [6] Lopez and Martinez reference Exhibits C and D separately, but Exhibit D contains the full email chain and includes all the content in Exhibit C.

Ibarro, 956 F. Supp. 2d 511, 513 (S.D.N.Y. 2013) ("[T]he party's Rule 17(c) subpoena must be able to reasonably specify the information contained or believed to be contained in the documents sought rather than merely hope that something useful will turn up." (alteration, citation, and internal quotations omitted)).

Instead, Lopez and Martinez just repeatedly state their conclusion – in essence, that there must be something good in these email accounts and, whatever it might be, the material is "unquestionably relevant" to the allegations against them and "critical" to their ability to present a defense.  Lopez & Martinez Br. at 7.  In fact, the presence of a single email chain containing a personal email account in the thousands of communications produced to the defendants supports the opposite inference – i.e., that in fact Mr. Burzaco confined his communications regarding his work at Torneos almost exclusively to his work email account.  In any event, Lopez and Martinez have not come close to meeting the requirements of Rule 17.

Indeed, if the showing made by Lopez and Martinez were sufficient to satisfy the standard set by Rule 17, defense subpoenas requesting searches of the personal email accounts – and desk drawers, filing cabinets, laptops, and other personal effects – of cooperating and other government witnesses would be virtually automatic in every case.  Moreover, the prohibition on using Rule 17 subpoenas to engage in a "fishing expedition" would be rendered meaningless.  That is not how the rule functions, as the relevant authorities make clear.  See, e.g., United States v. Bergstein, 788 F. App'x 742, 746 (2d Cir. 2019) (affirming quash of Rule 17 subpoenas seeking "'[a]ll e-mails or other communications [cooperating witnesses] authored . . . or received'" relating to indictment, in part because the defendant's subpoenas "plainly constituted a fishing expedition for 'documents the government did not obtain' and that he admittedly 'cannot identify'" (citation omitted)); United States v. Ulbricht, 858 F.3d 71, 109 (2d Cir. 2017) (observing

13

that party requesting subpoena must show that "the party cannot properly prepare for trial without such production," and that "the application is made in good faith and is not intended as a general 'fishing expedition'" (quoting <u>Nixon</u>, 418 U.S. at 700)); <u>United States v. Carton</u>, No. 17-CR-680 (CM), 2018 WL 5818107, at *2-6 (S.D.N.Y. Oct. 19, 2018) (quashing subpoenas on ground that defendant had failed to meet requisite standard, and describing request for years' worth of communications as "plainly a fishing expedition, seeking impeachment information for a likely Government witness"); <u>United States v. Hatfield</u>, No. 06-CR-550 (JS), 2009 WL 2030350, *1-2 (E.D.N.Y. July 14, 2009) (quashing subpoena for witness statements because it failed to meet the <u>Nixon</u> requirements and violated Rule 17(h) – barring use of subpoenas to obtain statements of a witness or prospective witness – and Section 3500); <u>Vasquez</u>, 258 F.R.D. at 72-73 (subpoena did not meet <u>Nixon</u> requirements and violated Rule 17(h)); <u>United States v. Khan</u>, No. 06-CR-255 (DLI), 2009 WL 152582, at *3-4 (E.D.N.Y. Jan. 20, 2009) (quashing subpoenas for prior statements of potential government witnesses because they violated Rule 17 and Section 3500); <u>United States v. Barnett</u>, No. 05-CR-1007 (JFK), 2006 U.S. Dist. LEXIS 54170, at *1-2 (S.D.N.Y. Aug. 3, 2006) (subpoena for recorded Metropolitan Detention Center calls of potential government witness quashed because it failed to meet <u>Nixon</u> requirements).

    The government notes that the Defendants have not identified a single case – in any district, at any time – in which a district court has granted a Rule 17 subpoena in a context similar to the one at issue here, or seeking the content of private email accounts from a service provider.

  B. <u>The Defendants' Complaints About the Government's Investigation Are Untrue, and Not a Basis for Issuing the Requested Subpoenas</u>

    To the extent Lopez and Martinez suggest that the government's decision not to search Mr. Burzaco's iPhone and BlackBerry provides a basis to grant the pending motion for Rule 17 subpoenas for the contents of personal email accounts, the argument should be rejected.

1.    <u>Legal Standard</u>

The government is entitled to conduct its investigations as it sees fit – within the bounds of professional conduct and applicable laws, of course.  It generally is not obligated to pursue any particular avenue of investigation or investigative technique, take in any particular evidence, interview any particular witness, or search any particular drawer, device, or person.  <u>See</u> <u>Carton</u>, 2018 WL 5818107, at *3 (rejecting subpoena request designed to show "a lack of thoroughness and completeness of the Government's investigation" because "the Government is not on trial in this case, and the jury will not be asked to pass on the adequacy of its investigation"); <u>see also</u> <u>United States v. Saldarriaga</u>, 204 F.3d 50, 53 (2d Cir. 2000) (holding that jury was properly instructed that "the government has no duty to employ in the course of a single investigation all of the many weapons at its disposal, and that the failure to utilize some particular technique or techniques does not tend to show that a defendant is not guilty of the crime with which he has been charged").

The law also does not "require the government to act as a private investigator and valet for the defendant, gathering evidence and delivering it to opposing counsel." <u>United States v. Tadros</u>, 310 F.3d 999, 1005 (7th Cir. 2002).  With respect to cooperating witnesses, the government has no obligation to hunt for <u>Giglio</u> material based on defense counsel's speculation that such material might exist.  <u>See</u> <u>United States v. Barcelo</u>, No. 13-CR-38 (RJS), 2014 WL 4058066, at *9 (S.D.N.Y. Aug. 15, 2014) (Sullivan, J.) (finding no <u>Brady</u> obligation to disclose defense-favorable information known by cooperating witness based on a theory of constructive knowledge), <u>aff'd</u>, 628 F. App'x 36 (2d Cir. 2015); <u>United States v. Meregildo</u>, 920 F. Supp. 2d 434, 444-46 (S.D.N.Y. 2013) (prosecution had no obligation under <u>Brady</u> or otherwise to obtain and disclose to defendant social networking posts cooperating witness made while incarcerated); <u>see also</u> <u>United States v. Graham</u>, 484 F.3d 413, 416-18 (6th Cir. 2007) (finding no <u>Brady</u>

15

obligation to discover fifteen boxes of evidence in cooperating witness' control); United States v. Garcia, 509 F. App'x 40, 42-43 (2d Cir. 2013) ("The Brady rule requires prosecutors to learn of any favorable evidence known to other members of the prosecution team . . . [b]ut this duty is not limitless, and this Court has never held that the "prosecution team" includes cooperating witnesses."); cf. United States v. Hunt, 534 F. Supp. 3d 233, 257 n.17 (E.D.N.Y. 2021) (Chen, J.) (prohibiting the defense from "suggest[ing] to the jury . . . that the Government failed to obtain evidence that the defense believes may be material" from the defendant's social media accounts  (emphasis in original)).

2.  Discussion

Lopez and Martinez's suggestion that the government turned away from evidence in this case is wrong and provides no basis for the Court to issue the requested subpoenas.

The Court has indicated that it found the government's decision not to search Burzaco's iPhone and BlackBerry "curious."  ECF Dkt. No. 1621 at 3 n.4.  Counsel for Lopez went much further during oral argument on December 14, 2021, suggesting that the government actively sought to turn away from relevant, potentially exculpatory evidence.  See Dec. 14, 2021, H'rg Tr. 42-43.  The government respectfully disagrees that its decision was curious.  Even if reasonable minds might disagree on that point, the government submits that it is permitted to conduct its investigation as it deems most effective and efficient provided it does so in good faith and in keeping with its legal obligations.  The government rejects counsel for Lopez's suggestion that it did anything improper.  See id. (stating that the government "wanted nothing to do with" and "steadfastly did not want to see" and "did nothing" to obtain relevant evidence).  It bears emphasizing that, in any event and in response to the Defendants' initial request for a Rule 17 subpoena – which the government moved to quash and continues to view as seeking information the defense is not entitled to – the government voluntarily agreed to search the iPhone and analyze

16

to the BlackBerry and chips.  Having reviewed the iPhone data, the government has turned over materials that arguably fall within Rule 16, consistent with its broad view of discovery in this case.  The government has seen nothing in that data to give it a different view of its initial decision from an investigative standpoint, though perhaps the government will seek to introduce some of the data at trial.[7]

Against this backdrop, Lopez and Martinez's suggestion that the government turned away from important evidence is disingenuous, at best.  It appears that one theory Lopez may seek to advance is that Mr. Burzaco's credibility should be questioned because his work phone was restored to factory settings, notwithstanding that Mr. Burzaco went to some lengths to ensure that the BlackBerry was preserved and brought to the United States, cooperated immediately upon arrival in the United States, provided information about his own conduct and criminal conduct of co-conspirators, and pleaded guilty to the charges against him.  Perhaps the jury will find such a defense argument persuasive.  On the other hand, perhaps the jury will wonder why, if Mr. Burzaco allegedly meant to destroy evidence, he took pains to ensure that the BlackBerry and the iPhone and two chips made it to the United States, when they easily could have been "lost" in the shuffle of extradition through an Italian jail.  The government does not here preview the full scope of such arguments – these will be issues for the jury to consider, subject to the Court's evidentiary rulings. The point is that the defense's argument that the government turned away from Mr. Burzaco's iPhone and BlackBerry does nothing to advance the defendants' request for access to Mr. Burzaco's personal email accounts.[8]

---

[7] The government has offered to run any tests on the BlackBerry and chips that the defense proposes, within reason, though the government does not intend to give the device to the defendants.

[8] To the extent Lopez and Martinez seek the content of Mr. Burzaco's personal email accounts in the hopes that they can use them to impeach him, their subpoenas also fail.  United

Because Lopez and Martinez's subpoenas fail the <u>Nixon</u> test, their motion must be denied.

      C.      <u>The Stored Communications Act Precludes the Requested Subpoenas</u>

           1.      <u>Applicable Law</u>

The SCA governs the disclosure of stored wire and electronic communications and transactional records held by third-party electronic communication services and remote computing services (collectively referred to herein as "service providers"). It is structured as a broad prohibition on disclosure, with specific enumerated exceptions. <u>See</u> 18 U.S.C. §§ 2702, 2703; <u>Crispin v. Christian Audigier, Inc.</u>, 717 F. Supp. 2d 965, 974-75 (C.D. Cal. 2010) (describing SCA as "a broad prohibition on disclosure with limited and carefully regulated exceptions"). These exceptions include permitting a service provider's "voluntary disclosure" of records to non-governmental entities, 18 U.S.C. § 2702(c)(6); <u>see</u> <u>In re Zynga Privacy Litig.</u>, 750 F.3d 1098, 1107 (9th Cir. 2014) (SCA "expressly allow[ed]" Facebook to share non-content records about users of free social gaming applications with non-governmental third parties for purposes of selling advertisements), and the "required disclosure" of records to "a governmental entity," 18 U.S.C. § 2703 (setting forth procedures by which the contents of communications and non-content records can be compelled from service providers by subpoena, court order, or warrant).

---

States v. Binday, 908 F. Supp. 2d 485, 492 (S.D.N.Y. 2012) ("[A] proposed subpoena does not satisfy the <u>Nixon</u> three-pronged test if it seeks material that could be used at trial only to impeach a witness."); <u>Jasper</u>, 2003 WL 1107526, at *2 (denying Rule 17 subpoena where defendant "failed to show that the documents sought in this subpoena will be used for anything other than impeachment purposes"); <u>United States v. Kaufman</u>, No. 13-CR-411 (JMF), 2014 WL 2048198, at *10 (S.D.N.Y. May 19, 2014) ("It is well established . . . that Rule 17(c) does not provide a basis for pre-trial 'production of materials whose evidentiary use is limited to impeachment.'" (citation omitted)).

As the Second Circuit and other courts have recognized, the SCA does not authorize the compelled disclosure by service providers of records or communications to non-governmental entities, including criminal defendants.  See United States v. Pierce, 785 F.3d 832, 842 n.2 (2d Cir. 2015) (observing that the SCA does not permit a defendant to subpoena records and other information pertaining to a subscriber or customer from a service provider, and noting this one-sided access exists elsewhere in the law, such as with wiretaps); Hunt, 534 F. Supp. 3d at 257 n.17 (quoting Pierce's statement that the SCA does not permit a defendant to subpoena records and other information pertaining to a subscriber or customer from a service provider); United States v. Wenk, 319 F. Supp. 3d 828, 829 (E.D. Va. 2017) ("[T]he [SCA] does not contain a provision detailing the methods with which criminal defendants can require disclosure despite containing such a provision for governmental entities."); Facebook, Inc. v. Wint, 199 A.3d 625, 628 (D.C. 2019) (reversing contempt order against Facebook, which refused to comply with murder defendant's court-authorized subpoena for communications, on the grounds that such "disclosure was generally prohibited under the SCA").  Rather, because they lack explicit statutory authorization, such subpoenas are "prohibited." Wint, 199 A.3d at 628.

2. Discussion

The SCA provides no basis under which a criminal defendant may compel a service provider to provide communications.  To the contrary, the SCA provides for only specific enumerated instances in which one can compel information from a service provider, none of which authorize compelled disclosure to a criminal defendant.  Nor is the government aware of any instance of a service provider providing anyone the content of communications pursuant to a subpoena.  The government must obtain a court-authorized search warrant supported by probable cause to obtain such information.

19

II.     Full Play's Subpoenas and Letters Rogatory Should be Denied

Full Play moves for the issuance of Rule 17 subpoenas to CONCACAF and Traffic USA and letters rogatory to Torneos, Traffic Brazil, Traffic International, and CONMEBOL.  The motion should be denied for failure to meet the requirements of relevance, admissibility, and specificity set forth in Nixon and related authorities.  418 U.S. at 800.

Full Play seeks several broad categories of information, including "information" regarding fiduciary duties, codes of ethics, and codes of conduct; investigative findings relating to violations of such codes of ethics or conduct; information that any employee or agent of the specified entities "communicated or made known to FPG" that the entities or leadership was "aware of, permitted, condoned, or in any way required payments to obtain or secure contracts"; information relating to contracts awarded to the specified entities; and information relating to salaries for directors and officers of CONCACAF or CONMEBOL.  FPG Mot. at 1-2.  Full Play argues that such information is relevant to the defense theories that, among other things, there were no victims of the alleged frauds, and that CONCACAF and CONMEBOL expected their officers to receive payments from "vendors or contractual partners as a way to supplement their salary." Id. at 8.

These arguments fail for several reasons.  First, contrary to Full Play's assertion that the government has confirmed that it is not in possession of the requested materials, some of the requested information – including relevant contracts, documents relating to CONCACAF and CONMEBOL's codes of ethics and related codes of conduct, certain meeting minutes for the relevant soccer organizations, and compliance documents related to the specified commercial entities – has already been produced to the Defendants.  See United States v. Columbo, No. 04-CR-273(NRB), 2006 WL 2012511, at *15 (S.D.N.Y. July 18, 2006) (denying subpoena request for materials already produced by the government).

20

Second, the requested categories of information are poorly defined and are unlikely to generate material or admissible evidence beyond that already produced.  As an initial matter, Full Play does not explain the relevance of the requested codes of conduct or investigative materials, if any, maintained at the specified commercial entities.  Traffic pleaded guilty in connection with this case and Torneos admitted its criminal culpability in the context of its Deferred Prosecution Agreement, so it is no defense to suggest that these entities did not pay sufficient attention to combatting bribery.  Along the same lines, Full Play suggests that evidence that officers of the identified entities were "aware of, permitted, condoned, or in any way encouraged" payments to soccer officials is somehow relevant to their defense.  But Mr. Burzaco, the CEO of Torneos, and José Hawilla, the founder and head of Traffic, both pleaded guilty to the charged offenses.  So, yes, the leadership of these companies participated the payments at issue, and in doing so participated in criminal conduct.  Full Play does not explain how these facts would be helpful to its defense or are otherwise the proper subject of its Rule 17 subpoenas and letters rogatory.  In addition, the government notes that the charges against Full Play do not turn on violations of duties owed to sports marketing companies; rather, the charges allege violations of duties owed to soccer governing bodies.  As to the remaining categories of information, Full Play has not articulated a theory of materiality or admissibility or a theory as to why any of the requested information is likely to exist – in sum, they seek to undertake the sort of fishing expedition that is barred by Nixon and its progeny.  Nixon, 418 U.S. at 700; Chen De Yian, 1995 WL 614563, at *2 (holding that subpoena was "accurately described as a fishing expedition" and that, "[o]n this ground it also deserves to be quashed").

Because Full Play – like Lopez and Martinez – has failed to satisfy the conditions for issuance of a Rule 17 subpoena or letter rogatory, its motion should be denied.

<u>CONCLUSION</u>

For the foregoing reasons, the Defendants' motions for Rule 17 subpoenas and letters rogatory should be denied.

Dated:      Brooklyn, New York
            December 23, 2021

                                            Respectfully submitted,

                                            BREON PEACE
                                            United States Attorney

                              By:      /s/
                                       _____
                                       Samuel P. Nitze
                                       Patrick T. Hein
                                       Kaitlin T. Farrell
                                       Victor A. Zapana
                                       Assistant United States Attorneys
                                       (718) 254-7000

22