**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

EDUARDO LI,

                Petitioner,

        v.

UNITED STATES OF AMERICA,

                Respondent.

No. 15-cr-00252 (PKC)

# PETITION FOR A WRIT OF ERROR *CORAM NOBIS*
# AND MEMORANDUM IN SUPPORT

Sam Rosenthal
Nelson Mullins Riley & Scarborough LLP
330 Madison Avenue 27th Floor, New York, NY 10017
(212) 413-9000
Sam.rosenthal@nelsonmullins.com

*Counsel for Petitioner Eduardo Li*

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................................................................iii

INTRODUCTION ........................................................................................................................... 1

BACKGROUND ............................................................................................................................. 2

    I.    PROCEDURAL HISTORY ............................................................................................ 2

    II.    UNITED STATES V. FULL PLAY GROUP, S.A. ........................................................... 4

ARGUMENT ................................................................................................................................... 4

    I.    THE PETITION FOR CORAM NOBIS RELIEF SHOULD BE GRANTED ................... 5

        A.    The Writ is Appropriate Where the Conviction is Based on Conduct Which Does Not Constitute a Crime under the Statute. ..................................................... 5

        B.    Mr. Li's Petition Is Timely. ..................................................................................... 7

        C.    Mr. Li's Conviction Continues to Cause Him Concrete Harm. .............................. 8

    II.    THE MONIES PAID BY MR. LI AS A RESULT OF HIS CONVICTION SHOULD BE RETURNED TO HIM. ................................................................................................ 9

CONCLUSION .............................................................................................................................. 10

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Allen v. United States*,
    867 F.2d 969 (6th Cir. 1989) .................................................................................................. 6

*Ciminelli v. United States*,
    598 U.S. 306 (2023) ........................................................................................................... 4, 6

*Doe v. United States*,
    915 F.3d 905 (2d Cir. 2019) .................................................................................................. 4

*Edwards v. United States*,
    564 F.2d 652 (2d Cir. 1977) .................................................................................................. 5

*Foont v. United States*,
    93 F.3d 76 (2d Cir. 1996) ...................................................................................................... 5

*Kovacs v. United States*,
    744 F.3d 44 (2d Cir. 2014) ................................................................................................ 5, 8

*Martingnoni v. United States*,
    No. 92 Cr. 1097 (JFK), 10 Civ. 6671, 2011 WL 4834217 (S.D.N.Y. Oct. 12, 2011) ........ 5, 6

*Nelson v. Colorado*,
    581 U.S. 128 (2017) ......................................................................................................... 9, 10

*Parietti v. United States*,
    No. 16-CR-373 (PAE), 2022 WL 3139623 (E.D.N.Y. Aug. 5, 2022) ................................... 9

*Percoco v. United States*,
    598 U.S. 319 (2023) ........................................................................................................... 4, 6

*United States v. Brooks*,
    872 F.3d 78 (2d Cir. 2017) .................................................................................................. 10

*United States v. Bruno*,
    903 F.2d 393 (5th Cir. 1990) ................................................................................................. 6

*United States v. Christopher*,
    273 F.3d 294 (3d Cir. 2001) ................................................................................................ 10

*United States v. Full Play Group, S.A.*,
    15-CR-252(S-3)(PKC), 2023 WL 5672268 (E.D.N.Y. Sept. 1, 2023) ..................... 1, 4, 6, 7

*United States v. Holt*,
    No. 2:05-CR-20012, 2017 WL 1181509 (W.D. La. Mar. 28, 2017) ..................................... 8

*United States v. Libous*,
  858 F.3d 64 (2d Cir. 2017) .................................................................................................... 9

*United States v. Mandel*,
  862 F.2d 1067 (4th Cir. 1988) .......................................................................................... 6, 9

*United States v. Morgan*,
  346 U.S. 502 (1954) ............................................................................................................. 5

*United States v. Panarella*,
  No. 00–655, 2011 WL 3273599 (E.D. Pa. Aug. 1, 2011) ..................................................... 8

*United States v. Peter*,
  310 F.3d 7096 (11th Cir. 2002) (per curiam) .................................................................. 6, 7

*United States v. Pierce*,
  224 F.3d 158 (2d Cir. 2000) ................................................................................................ 7

*United States v. Reguer*,
  901 F. Supp. 515 (E.D.N.Y. 1995) ...................................................................................... 6

*United States v. Travers*,
  514 F.2d 1171 (2d Cir. 1974) (Friendly, J.) ..................................................................... 5, 7

*United States v. Walgren*,
  885 F.2d 1417 (9th Cir. 1989) ............................................................................................. 6

*United States v. Woodward*,
  No. CR 95-10234-DPW, 2017 WL 4684000 (D. Mass. Oct. 18, 2017), *aff'd*, 905 F.3d 40 (1st Cir. 2018) ..................................................................................................................................... 7

### Statutes

8 U.S.C. § 1101(a)(43)(M)(i) .................................................................................................... 8

8 U.S.C. § 1227(a)(2)(A)(iii) ..................................................................................................... 8

18 U.S.C. § 1961(5) ................................................................................................................... 7

18 U.S.C. § 1962(c) ................................................................................................................... 7

Eduardo Li submits this petition for a writ of error *coram nobis* to vacate his conviction and sentence entered by this Court on December 6, 2018. He respectfully requests permission to supplement these materials in the event the Second Circuit issues a ruling on issues impacting the relief requested herein.

**INTRODUCTION**

On October 7, 2016, Defendant Eduardo Li ("Li") pled guilty to one count of RICO conspiracy and two counts of conspiracy to commit wire fraud. He was sentenced to time served on counts of the superseding indictment, counts 1, 22 and 58, to run concurrently with each other, two years supervised release, a $100 special assessment fee on each count, and a $5,000 fine on each count, for a total of $15,300. Additionally, the Court ordered that Mr. Li forfeit $668,000. Tr., Nov. 13, 2018 at 43. He was also ordered to pay restitution of $321,604.08, which was satisfied out of the forfeited funds, and to pay an additional $1,839,488.78, which was found by the Court to be jointly and severally payable by all defendants. ECF 1209. Mr. Li appealed from the restitution order. During the course of that appeal, the Government took the position that the order imposing joint and several liability had been satisfied by payments from the various defendants, and therefore mooted the appeal. ECF 1725. On remand, the Court modified the judgment accordingly. See ECF 1732. That order failed to relieve Mr. Li of the forfeiture order, fines or special assessment.

On September 1, 2023, in the related case *United States v. Full Play Group, S.A.*, this Court issued a ruling which directly demonstrates that Mr. Li's conduct did not constitute a crime. The Court ruled in that case that the identical conduct as to which Mr. Li pled guilty did not constitute a crime under the statutory scheme in question, and therefore vacated the convictions. *See* No. 15-CR-252(S-3)(PKC), 2023 WL 5672268 (E.D.N.Y. Sept. 1, 2023). Mr. Li is entitled to the same

1

relief. In short, he was imprisoned extensively both in Switzerland and in the U.S. after being extradited, and forced to pay substantial sums for something which is not even a crime.

This case presents exactly what a writ of error *coram nobis* was designed to addressed, namely where justice requires that a conviction be vacated. Because Mr. Li's conviction, sentence and order of restitution was predicated solely on conduct which has been determined by this Court to be insufficient to sustain a conviction, the *writ* should issue, vacating his conviction and judgment, including the order of restitution.

## BACKGROUND

### I. PROCEDURAL HISTORY

Mr. Li was arrested in Switzerland on May 27, 2015, and remained there until extradited to the United States. He remained incarcerated in the United States until he was released pursuant to an order granting bail on February 24, 2016. See ECF 235.

Mr. Li ultimately pled guilty to a Superseding Indictment, which was filed on November 25, 2015, and charged Li with entering into a racketeering conspiracy ("RICO"), in violation of 18 U.S.C. § 1962(d) (Count One), as well as a conspiracy to commit wire fraud, and substantive counts of wire fraud, in violation of 18 U.S.C. §§ 1349 and 1343, respectively. ECF 440-42. The gist of the charges was that Li engaged defrauded foreign soccer associations of "honest services" by engaging in foreign commercial bribery.

The RICO conspiracy itself was broken down into fifteen separate "schemes," as well as nine sub-schemes. Each of the schemes and sub-schemes operated during differing time periods, and contained different participants, and impacted different victims. Only one of these fifteen schemes involved Li: the scheme involving the Central American Football Federation ("UNCAF") which involved soccer federations in Central America. ECF 102.

Even as to the one scheme in which he was involved, namely the UNCAF scheme, Li was involved in only a small portion of the actions constituting that scheme. More particularly, Li was charged only with one of six sub-schemes that made up the UNCAF scheme, namely the scheme involving Federación de Costarricense de Futbol ("FEDEFUT"), the national soccer league of Costa Rica. Consequently, other than engaging in a racketeering conspiracy arising from his involvement in the FEDEFUT scheme, Li was not alleged to have been involved in any of the other twenty-three schemes or sub-schemes set forth in the Superseding Indictment, which involved bribes or corrupt payments related to international tournaments operated by FIFA, schemes involving the Confederacion Sudamericana de Fútbol ("CONMEBOL"), or schemes pertaining to any of the other five constituent members of FIFA.

In pleading guilty on October 7, 2016, Li admitted his guilt only to engaging in the RICO conspiracy charged in Count One, engaging in wire fraud charged in Count Twenty-Two and conspiracy to commit wire fraud charged in Count Fifty-Eight. The latter two counts involved conduct payments made in connection with Li's role as President of FEDEFUT. Count Twenty-Two charged the payment of $150,000 in April, 2015. Count Fifty-Eight charged that Li conspired in October and November, 2014 to accept a bribe in connection with certain "friendlies" matches played by FEDEFUT, which involved payment of $40,000 to Li. Because FEDEFUT was a member of CONCACAF, which was one of the constituent members of FIFA, all three entities were alleged to be victims of those crime.   ECF 102 *et seq.*

In sentencing Li on November 13, 2018 to time served (namely approximately nine months in U.S. and Swiss jails) and ordering that he forfeit the funds obtained by him, the District Court recognized the difference between Li's conduct and that of the other "co-conspirators." The Court observed that Li's "smaller acts of theft or bribery" were "of a different sort," Sentencing Tr., Nov. 13, 2018, at 33, from other defendants whose involvement was far greater in accepting bribes. *Id.* at 31-32.

3

## II.     UNITED STATES V. FULL PLAY GROUP, S.A.

In September 2023, the Court granted a motion for acquittal by two defendants who were alleged to be co-conspirators in the FIFA scheme: Full Play Group, S.A. and Hernán Lopez. The Court held that "Section 1346's scope does not extend to foreign commercial bribery." *Full Play*, 2023 WL 5672268, at *15. The Court based its decision on the Supreme Court's recent decisions in *Ciminelli v. United States*, 598 U.S. 306 (2023) and *Percoco v. United States*, 598 U.S. 319 (2023). The Court found these decisions prohibited an expansion of the federal wire fraud statutes in the manner employed by the Government in this case. *Full Play*, 2023 WL 5672268, at *24. In doing so the Court reversed "its previous ruling regarding § 1346's scope, and [found] that the honest services wire fraud statute does not encompass foreign commercial bribery as charged against Defendants." *Id.* at *23. The Court cited "the absence of precedent applying honest services wire fraud to foreign commercial bribery" to conclude that "§ 1346 does not criminalize the conduct alleged in this case and . . . therefore the evidence at trial was insufficient to sustain Defendants' convictions under that statute." *Id.* at *15; *see also id.* at *25 ("[N]one of the Government's appeals to common law, state law, civil law, foreign law, or codes of conduct, overcome the basic fact that there is no precedential authority to support the application of *this* federal criminal statute, § 1346, to foreign commercial bribery. . . .").

## ARGUMENT

A *coram nobis* petition is a collateral proceeding to correct fundamental errors in a prior judgment when the petitioner is not in custody and thus cannot pursue habeas relief. *See Doe v. United States*, 915 F.3d 905, 909 (2d Cir. 2019). The instant petition should be granted. This should include vacating the conviction and returning all funds paid by Mr. Li to satisfy the judgment.

## I. THE PETITION FOR *CORAM NOBIS* RELIEF SHOULD BE GRANTED.

The All Writs Act, 28 U.S.C. § 1651 allows the Court the authority to correct an injustice pursuant to a *writ of coram nobis. United States v. Morgan*, 346 U.S. 502, 505 & n.6 (1954). Here, Mr. Li was incarcerated for an extended period of time; he continues to suffer from having to pay substantial sums for restitution and forfeiture, and other life-long disqualifications, such as the life-time bar against any employment or involvement with soccer. Because the results of the judgment may persist, the *writ* should be granted. *Id.* at 512-13. *Coram nobis* relief is granted when "1) there are circumstances compelling such action to achieve justice, 2) sound reasons exist for failure to seek appropriate earlier relief, and 3) the petitioner continues to suffer legal consequences from his conviction that may be remedied by granting of the writ." *Kovacs v. United States*, 744 F.3d 44, 49 (2d Cir. 2014) (quoting *Foont v. United States*, 93 F.3d 76, 79 (2d Cir. 1996)).

### A. The Writ is Appropriate Where the Conviction is Based on Conduct Which Does Not Constitute a Crime under the Statute.

It has long been established that there are compelling reasons to vacate a conviction where the petitioner's conduct was not criminal. The Second Circuit held that *coram nobis* relief is warranted based on an intervening change in law showing that the petitioner had been "convicted and punished for an act that the law does not make criminal." *United States v. Travers*, 514 F.2d 1171, 1176 (2d Cir. 1974) (Friendly, J.) (internal quotation marks omitted). In *Edwards v. United States*, 564 F.2d 652, 654 (2d Cir. 1977), the Court similarly held that the Court had " granted relief . . . in coram nobis where, for example, subsequent decisions have made it clear that the petitioner committed no federal offense. . . ." Lower courts have followed the same approach. See, e.g., *Martingnoni v. United States*, No. 92 Cr. 1097 (JFK), 10 Civ. 6671, 2011 WL 4834217,

5

at *9-10 (S.D.N.Y. Oct. 12, 2011); *United States v. Reguer,* 901 F. Supp. 515, 522 (E.D.N.Y. 1995).

Significantly, the use of this important writ has repeatedly been found proper where, as here, the charges involve mail and wire fraud, which are later determined to be based on a flawed theory. In addition to *Martingnoni*, courts reached that same conclusion in *United States v. Mandel*, 862 F.2d 1067, 1071-75 (4th Cir. 1988) (affirming grant of *coram nobis* relief on mail fraud conviction after intervening Supreme Court decision of *McNally*); *United States v. Bruno*, 903 F.2d 393, 396 (5th Cir. 1990) ("[A] conviction [under an invalidated wire fraud theory] would constitute a 'complete miscarriage of justice' such as is required for coram nobis relief."); *Allen v. United States*, 867 F.2d 969, 970-72 (6th Cir. 1989) (affirming dismissal of mail fraud conviction on *coram nobis* petition after *McNally* changed underlying law); *United States v. Walgren*, 885 F.2d 1417, 1420-28 (9th Cir. 1989) (granting *coram nobis* relief on mail fraud count after *McNally*); *United States v. Peter*, 310 F.3d 709, 71116 (11th Cir. 2002) (per curiam) (reversing district court's denial of *coram nobis* relief on racketeering conspiracy count based on predicate acts of mail fraud after change in mail fraud law).

The above decisions are particularly relevant in addressing the present situation confronting the Court with regard to Mr. Li. Mr. Li was essentially convicted of commercial bribery. In vacating the convictions in *Full Play*, this Court concluded based on the Supreme Court's recent decisions in *Ciminelli* and *Percoco* that foreign commercial bribery cannot support a conviction for wire fraud. 2023 WL 5672268, at *23. The Court found that *Ciminelli* and *Percoco* made clear that "'the intangible right of honest services' must be defined with the clarity typical of criminal statutes and should not be held to reach an ill-defined category of circumstances" in the absence of law prior to the Supreme Court decision in *McNally*. *Id.* at *24 (quoting *Percoco*, 598

6

U.S. at 32829). The Court found that "[n]either the parties nor the Court ha[d] been able to identify a single pre-*McNally* case applying honest services wire fraud to foreign commercial bribery, i.e., bribery of foreign employees of foreign non-government employers." *Id.* at *24. The absence of any such authority "compel[ed] this Court to find that § 1346 does not apply to foreign commercial bribery." *Id.*

Similarly, the same result applies to Mr. Li's conviction under RICO. RICO requires the government to prove a "pattern of racketeering activity" beyond a reasonable doubt, which "requires at least two acts of racketeering activity." 18 U.S.C. §§ 1962(c), 1961(5). Because the predicate acts as to which Li pled guilty involved wire fraud that crime similarly could not be proven under the statute since – notwithstanding the different label – are also predicated on foreign commercial bribery. *See United States v. Pierce*, 224 F.3d 158, 160 (2d Cir. 2000) (reversing a money-laundering conspiracy conviction where the prosecution failed to prove the SUA of wire fraud); *Full Play*, 2023 WL 5672268 at *26 ("Defendants' convictions for money laundering, predicated on their honest services wire fraud convictions, also cannot be sustained.").

### B. Mr. Li's Petition Is Timely.

Mr. Li acted promptly after this Court's decision in *Full Play*, which established the factual and legal basis for challenging his conviction. Mr. Li has filed his petition far more promptly than has been found adequate to sustain the *writ*. *See*, *e.g.*, *Peter*, 310 F.3d at 711 (*coram nobis* relief granted where petitioner challenged conviction one year after intervening decision); *Travers*, 514 F.2d at 1172 (petitioner was entitled to *coram nobis* relief in part on grounds that he filed petition "[s]hortly after" change in law); *United States v. Woodward*, No. CR 95-10234-DPW, 2017 WL 4684000, at *4 (D. Mass. Oct. 18, 2017), *aff'd*, 905 F.3d 40 (1st Cir. 2018) (second factor satisfied

7

where petitioner pursued relief "approximately six months after the Supreme Court decided" the intervening case).

### C. Mr. Li's Conviction Continues to Cause Him Concrete Harm.

The third prong of the test for a *writ of coram nobis* is whether the conviction will result in the petition continuing to suffer concrete harm from his status as a convicted felon. *See Kovacs*, 744 F.3d at 49.

One harm which Mr. Li continues to suffer as a result of his conviction is the restraint on his travel. Because Mr. Li was convicted of an "aggravated felony" he was subject to deportation and restrictions on entry. 8 U.S.C. § 1227(a)(2)(A)(iii). An aggravated felony includes "an offense that . . . involves fraud or deceit in which the loss to the . . . victims exceeds $10,000." 8 U.S.C. § 1101(a)(43)(M)(i). Mr. Li has been unable to freely travel to the United States, as he had prior to his conviction, in order to seek medical treatment and participate in business affairs. See Li Decl., ¶ 5.

These restrictions on travel clearly qualify as continuing harm sufficient to satisfy the test for *coram nobis* relief. *See Kovacs*, 744 F.3d at 49 ("There is no doubt that Kovacs' likely ineligibility to reenter the United States constitutes a continuing consequence of his conviction."); *United States v. Panarella*, No. 00–655, 2011 WL 3273599, at *10 (E.D. Pa. Aug. 1, 2011) (listing "numerous restrictions on international travel" as example of "collateral consequences . . . sufficient to justify coram nobis relief"); *United States v. Holt*, No. 2:05-CR-20012, 2017 WL 1181509, at *3 (W.D. La. Mar. 28, 2017) ("restriction in travel" would be "considered a civil disability for a writ of coram nobis").

Similarly, the test for *coram nobis* relief is satisfied based on the fact that he has now been deprived of hundreds of thousands of dollars based on a conduct which does not constitute a crime.

8

He paid $668,000 in funds subject to restitution and forfeiture, and additional $15,300 in fines and special assessments as a result of his conviction. "[T]the continuing deprivation of property after a conviction has been reversed or vacated, with no prospect of reprosecution" may nevertheless be sufficient to show a due process violation. *See Nelson v. Colorado*, 581 U.S. 128, 135-36 (2017) ("Colorado may not presume a person, adjudged guilty of no crime, nonetheless guilty *enough* for monetary exactions."). As a result of the improper conviction, Mr. Li will continue to be deprived of those funds.

Another harm which Mr. Li continues to suffer is the loss of business which follows from his conviction. See Li Decl., paras. 5-7. Not only have banks refused to do business with him or any business with which he is associated, but he has essentially been forced out of business dealings because of the refusal on the part of some business partners or contacts to do business with a convicted felon. *See id.*

Accordingly, Mr. Li has suffered, and will continue to suffer, concrete harm stemming from his conviction if the writ is not granted.

## II.     THE MONIES PAID BY MR. LI AS A RESULT OF HIS CONVICTION SHOULD BE RETURNED TO HIM.

The return of fines and other financial penalties is warranted when convictions are vacated on *coram nobis*. *See*, *e.g.*, *Mandel*, 862 F.2d at 1075 & n.13 (affirming district court's order that government return any fines in connection with grant of coram nobis petition); *Parietti v. United States*, No. 16-CR-373 (PAE), 2022 WL 3139623, at *3 & n.2 (E.D.N.Y. Aug. 5, 2022) (government stipulated that $1 million fine would be returned to petitioner upon grant of *coram nobis* relief); *United States v. Libous*, 858 F.3d 64, 67 (2d Cir. 2017) ("Once [a defendant's] conviction is vacated, the state is as much entitled to retain the fine as if [the defendant] had been

9

acquitted."); *United States v. Brooks*, 872 F.3d 78, 88-90 (2d Cir. 2017) (upon abatement of conviction, the associated forfeiture, restitution, fine, and special assessment are also abated); *United States v. Christopher*, 273 F.3d 294, 298 (3d Cir. 2001) (fines and forfeiture must be returned upon abatement of conviction); *Nelson*, 581 U.S. at 130 (state must return restitution, costs and fees once conviction has been vacated).

Accordingly, the Government should return to Mr. Li the fine, special assessment, forfeiture and restitution amounts.

## CONCLUSION

The writ of error *coram nobis* should be granted as to Mr. Li, his conviction should be reversed and all monies paid by him pursuant to that judgment should be returned to him.

Dated: January 30, 2024
New York, New York

/s/ Sam Rosenthal

Nelson Mullins Riley & Scarborough LLP
330 Madison Avenue 27th Floor
New York, NY 10017
(212) 413-9000
sam.rosenthal@nelsonmullins.com

*Counsel for Petitioner Eduardo Li*